In the Matter of Francis Brungard,
Alleged to be Mentally Ill.

STATE OF OREGON,
*Respondent,*

*v.*

FRANCIS BRUNGARD,
*Appellant.*

(8804-95-776; CA A48450)

789 P2d 683

Kirsten Bey, Hillsboro, argued the cause for appellant. With her on the brief was Metropolitan Public Defenders, Hillsboro.

Michael Livingston, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Graber, Presiding Judge, and Riggs and Edmonds, Judges.

## GRABER, P. J.

This is an appeal from an order finding appellant to be a mentally ill person under ORS 426.005(2)(b) and (c)[1] and involuntarily committing him for 180 days. The issues are the sufficiency of the evidence and the constitutionality of ORS 426.005(2)(c). We review *de novo*. ORS 19.125(3); *State v. O'Neill*, 274 Or 59, 545 P2d 97 (1976).

The son and daughter of the allegedly mentally ill person (appellant) initiated this action to have him committed. Son testified that appellant was eating and sleeping less than usual and that he had not been taking lithium, which had been prescribed for him during previous stays at the Oregon State Hospital. Those actions were significant because, on other occasions when appellant had acted similarly, he had attempted suicide and had been involuntarily committed as a result. Although at the hearing appellant denied that he had stopped taking his medication, he told Skall, a mental health

---

[1] ORS 426.005(2) provides:

"(2)  'Mentally ill person' means a person who, because of a mental disorder, is one or more of the following:

"(a)  Dangerous to self or others.

"(b)  Unable to provide for basic personal needs and is not receiving such care as is necessary for health or safety.

"(c)  A person who:

"(A)  Is chronically mentally ill, as defined in ORS 426.495;

"(B)  Within the previous three years, has twice been placed in a state hospital following involuntary commitment under this chapter;

"(C)  Is exhibiting symptoms or behavior substantially similar to those that preceded and led to one or more of the hospitalizations referred to in subparagraph (B) of this paragraph; and

"(D)  Unless treated, will continue, to a reasonable medical probability, to physically or mentally deteriorate so that the person will become a person described under either or both paragraph (a) or (b) of this subsection."

ORS 426.495 provides, in relevant part:

"(2)  'Chronically mentally ill' means an individual who is:

"(a)  Eighteen years of age or older; and

"(b)  Diagnosed by a psychiatrist, a licensed clinical psychologist or a non-medical examiner certified by the Mental Health Division as suffering from chronic schizophrenia, a chronic major affective disorder, a chronic paranoid disorder or another chronic psychotic mental disorder other than those caused by substance abuse. For purposes of providing services in the community, the Mental Health Division may adopt rules consistent with this section and accepted professional practices in the fields of psychology and psychiatry more specifically to specify other criteria for determining who is chronically mentally ill."

examiner, that he had not been taking his medication recently. He also told Skall that he had not been eating or sleeping regularly. On the basis of those statements and his finding that appellant was mentally ill, Skall concluded that appellant was a danger to himself, was unable to provide for his basic needs, and was not receiving such care as was necessary for his health or safety.

Appellant was also examined by Drs. Friedman and Grant. Friedman noted that appellant has a bipolar disorder but did not agree that he met the "traditional" criteria for commitment. Friedman believed that, at the time of the hearing, appellant was "not a danger to himself or other people because of a mental disorder or * * * unable to care for his personal needs." Grant wrote in a report that appellant was "unable to provide for basic needs and is chronically ill." Her testimony at the hearing was somewhat more equivocal than her written opinion; she said that she was "not totally sure he's able to care for his basic needs."

The court ruled orally that appellant is "a mentally ill person and unable to care for [his] basic needs" and further found that he should be committed under the "expanded criteria" of ORS 426.005(2)(c).[2] The written order found only that he is "[u]nable to provide for basic personal needs and is not receiving such care as is necessary for health or safety."

■ The record does not disclose how disrupted appellant's sleep patterns were or how inadequate his nutrition might have been. He appears to have been at least eating sandwiches on a regular basis. Without more, the evidence of his eating and sleeping habits is insufficient to prove that he is unable to meet his basic needs. *See State v. Nance,* 85 Or App 143, 735 P2d 1271 (1987).

---

[2] The judge noted that "both of the examiners have found that you are a mentally ill person, that you are unable to care for your basic needs and do fall under the expanded commitment criteria." When asked to specify the basis for the commitment, the judge responded:

"[Judge]: Unable to care for basic needs.

"[Attorney]: Okay. Not the expanded criteria?

"[Judge]: Right."

The judge then said, "I'll expand my ruling to find that the evidence has shown that he falls within the expanded criteria of repeated hospitalizations in the past period of time."

■■ The major concern arises from appellant's neglect to take lithium, which was prescribed to control his bipolar disorder. In the past, depression had led him to be suicidal. Basic needs are those things necessary to sustain life. Medical care for a life threatening condition can be a basic need. *See State v. Brooks,* 35 Or App 347, 581 P2d 134 (1978). However, on this record, appellant's failure to take lithium is not shown to be *immediately* threatening, even when coupled with irregular sleeping and eating. *See State v. Fletcher,* 60 Or App 623, 654 P2d 1121 (1982). The trial court's order cannot be affirmed on the basis of failure to meet basic needs.

■ Although the court's written order was based solely on ORS 426.005(2)(b), the "expanded criteria" of ORS 426.005(2)(c) were also fully litigated. We are not constrained by the written order, if the lower court's ruling can be affirmed on another basis that was presented to it. *See Artman v. Ray,* 263 Or 529, 532-34, 501 P2d 63, *opinion clarified* 263 Or 529, 502 P2d 1376 (1972). Therefore, we turn to a consideration of the "expanded criteria."

There is clear and convincing evidence in the record to meet the expanded criteria. First, appellant is chronically mentally ill. ORS 426.005(2)(c)(A). Skall testified that he is certified as an examiner by the Mental Health Division and that appellant suffers from chronic bipolar disorder. Drs. Grant and Friedman also took note of appellant's long-standing bipolar disorder.[3]

■■ Appellant assigns no error to the court's findings under ORS 426.005(2)(c)(C) and (D), and clear and convincing evidence in the record persuades us to make the same findings. He argues, however, that the court cannot make a finding that he was previously committed, ORS 426.005(2)(c)(B), unless the record contains the commitment orders. We disagree. The orders may be the most efficient way to prove that he was committed, but nothing in the statute precludes other proof. *A fortiori,* we disagree with the argument that the "best evidence rule," OEC 1001 to OEC 1008, requires that the *original* commitment orders be put in the record. Testimony clearly and convincingly establishes that

---

[3] According to the *Diagnostic and Statistical Manual of Mental Disorders* 213 (3rd ed rev 1987), a bipolar disorder is an "affective disorder." *See* ORS 426.495.

appellant had been involuntarily committed twice within the three years preceding the hearing. His son, who lived with him when he was committed, testified about the commitment dates. He did not remember them exactly but was certain that his father had been committed twice in the last two years. Furthermore, appellant acknowledged that he had been committed one, two, or three times. The evidence satisfies ORS 426.005(2)(c)(B).

■   Appellant next contends that ORS 426.005(2)(c) "is unconstitutional in that it allows for commitment of persons who are not presently dangerous and who are presently able to care for their basic needs." In essence, his argument is that "[t]he danger cannot simply be a possibility that harm may occur at some indefinite point in the future" and that civil commitment "requires imminent and serious threat of harm." He relies on federal cases under the Due Process Clause of the Fourteenth Amendment. In particular, he points to the standard that the United States Supreme Court has established for evaluating a civil commitment:

> "A finding of 'mental illness' alone cannot justify a State's locking a person up against his will and keeping him indefinitely in simple custodial confinement. Assuming that that term can be given a reasonably precise content and that the 'mentally ill' can be identified with reasonable accuracy, there is still no constitutional basis for confining such persons involuntarily if they are dangerous to no one and can live safely in freedom.

> "* * * * *

> "In short, a State cannot constitutionally confine without more a nondangerous individual who is capable of surviving safely in freedom by himself or with the help of willing and responsible family members or friends." *O'Connor v. Donaldson,* 422 US 563, 575, 95 S Ct 2486, 45 L Ed 2d 396 (1975).

The state counters that ORS 426.005(2)(c) does not result in commitment on the basis of "[a] finding of 'mental illness' alone" and that due process prohibits only the commitment of a nondangerous, functioning person "without more." *O'Connor v. Donaldson, supra,* 422 US at 575, 576. According to the state, several aspects of the statute do require "more" than mental illness "alone" and thus satisfy the constitution. First, the statute applies only to people who are chronically mentally ill, not to those whose mental illness is

transient. Second, the statute requires overt acts that are substantially similar to acts that led to previous, recent hospitalizations. Third, the court must find that, unless treated, the person "will continue, to a reasonable medical probability, to physically or mentally deteriorate" to the point of being a danger or being unable to care for basic needs. ORS 426.005(2)(c)(D).

■■    We agree that due process does not require that the state wait for the moment when appellant would again try to take his own life before involuntarily committing him for treatment. *See, e.g., Johnson v. State,* 693 SW2d 559 (Tex Ct App 1985). Appellant contends that the statute is too broad, nonetheless. He reads ORS 426.005(2)(c) literally, asserting that its application is not limited to those persons who probably will endanger themselves or others, or who probably will not meet their basic needs, in the *immediate* future. That is, he argues that the probability of future harm is unconstrained by any time restriction. We construe statutes whenever reasonably possible so as to satisfy constitutional requirements. *State v. Smyth,* 286 Or 293, 593 P2d 1166 (1979); *State v. Rodinsky,* 60 Or App 193, 653 P2d 551 (1982). It is consistent with both the words and the purpose of ORS 426.005(2)(c)(D) to construe it as implicitly requiring a finding that, unless treated, the person will continue, to a reasonable medical probability, to deteriorate in the near future to the point of being a danger or being unable to care for basic needs.

■    Clear and convincing evidence shows that appellant's condition will deteriorate in the immediate future. Much of the pattern that has led to his past hospitalization, as well as a suicide attempt, had already occurred. For instance, he had stopped going out to visit friends, and his eating and sleeping patterns had become disrupted. His daughter testified that the changes were not gradual but were rapid and that the greatest change had taken place over a two- to three-week period. Finally, a medical examiner's opinion was that, rather than being a danger to himself sometime in the future, appellant was currently a danger to himself. We hold that appellant was properly committed under the expanded criteria.

■    Lastly, appellant argues that the "expanded criteria" violate both Article I, section 20, of the Oregon Constitution,

and the Equal Protection Clause of the Fourteenth Amendment. He claims that the requirement in ORS 426.005(2)(c)(B) that a person have been committed in a state hospital means that "only those who cannot afford to stay in private hospitals or do not have medical insurance" are subject to commitment under the statute. He misreads the statutory scheme. Wealthy people are equally subject to commitment, if they are not willing and able to participate in treatment on a voluntary basis. *See* ORS 426.130. Similarly, poor people can avoid commitment if they are willing and able to undergo treatment voluntarily in publicly supported programs. When people can control their inclusion in or exclusion from a statutory category, as is true here, the statute does not run afoul of Article I, section 20. *See State v. Clark,* 291 Or 231, 238, 630 P2d 810, *cert den* 454 US 1084 (1981). The analysis under the Fourteenth Amendment is the same. *State v. Clark, supra,* 291 Or at 243.

Affirmed.

**RIGGS, J.,** concurring.

I concur with the majority and write only to point out that there is no showing, *on this record,* that ORS 426.005(2)(c) creates an impermissible classification that distinguishes between persons who have been committed *involuntarily* twice in the past three years and those who have been *voluntary* hospital patients only because their financial circumstances were more favorable. This record, therefore, does not support a holding that the statutory expanded criteria scheme violates either Article I, section 20, of the Oregon Constitution, or the Equal Protection Clause of the United States Constitution. Whether an appropriate record would support such a holding awaits another case.