Argued and submitted September 6, reversed October 18, 1995

In the Matter of Marilyn Sea,
Alleged to be a Mentally Ill Person.

STATE OF OREGON,
*Respondent,*

*v.*

MARILYN SEA,
*Appellant.*

(C89-0005MC; CA A84869)

904 P2d 182

Susan D. Isaacs argued the cause and filed the brief for appellant.

John T. Bagg, Assistant Attorney General, argued the cause for respondent. With him on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Before Deits, Presiding Judge, and De Muniz and Haselton, Judges.

HASELTON, J.

## HASELTON, J.

Appellant seeks reversal of an order finding her to be a mentally ill person and committing her to the Mental Health Division. ORS 426.130(1)(b)(C). The trial court determined that appellant, because of a mental disorder, is unable to provide for her basic personal needs and is a danger to herself. ORS 426.005(1)(d)(A) and (B).[1] On *de novo* review, we reverse. *State v. O'Neill*, 274 Or 59, 61, 545 P2d 97 (1976).

Appellant, a retired librarian, is 59 years old and lives alone in a condominium. She receives Social Security benefits and payments from the Public Employes' Retirement System, which are directly deposited into her bank account. Appellant shops for herself, launders her own clothes, and pays her own utility, housing, and grocery bills.

Appellant suffers periodic delusions caused by a form of schizophrenia, known as Capgras Syndrome. The syndrome causes appellant to perceive "doubles" or "look-alikes" of people.[2] In addition, she believes that objects in her home have been removed or rearranged by unidentifiable people or forces. She also believes that she hears loud sounds emanating from shelves of merchandise at grocery stores and believes that unseen forces are communicating with her through the labels of packaged goods. Appellant's delusions have, at times, caused her to feel confused and uncomfortable in her home and in public. She has, on occasion, been reluctant to make trips to the grocery store and has refused to permit her mental health caseworker to enter her home.

---

[1] ORS 426.005(1)(d)(A) and (B) (*formerly* ORS 426.005(1), (2)(a) and (b)) provides:

"(1) As used in ORS 426.005 to 426.390, unless the context requires otherwise:

"* * * * *

"(d) 'Mentally ill person' means a person who, because of a mental disorder, is one or more of the following:

"(A) Dangerous to self or others.

"(B) Unable to provide for basic personal needs and is not receiving such care as is necessary for health or safety."

[2] Schmidt's Attorney's Dictionary of Medicine C-36 (1995), defines Capgras Syndrome (or Capgras's Syndrome) as "[a] phenomenon observed in some schizophrenic patients. The belief of the patient is that someone close to him has been substituted by an imposter."

Appellant says that she experiences blackout spells but does not know what causes them and is unable to describe their duration or effects. Although appellant has been prescribed medication for her anxiety, she refuses to take it because she believes that it does not improve her condition.

At the hearing, appellant was examined by two mental health professionals. One concluded that she was both dangerous to herself and unable to provide for her basic needs; the other recommended commitment on the latter basis only. The trial court concluded that appellant should be committed on both grounds.

On *de novo* review, we examine the record to determine whether the state has established by clear and convincing evidence that appellant is either unable to provide for her basic needs or is a danger to herself. *State v. Johnson*, 131 Or App 561, 564, 886 P2d 42 (1994). To be "clear and convincing," evidence must be of "extraordinary persuasiveness." *Id.*; *State v. Siebold*, 100 Or App 365, 366, 786 P2d 219 (1990). We conclude that the state failed to meet its burden with respect to either of the asserted bases for commitment.

We first consider "basic needs." In *State v. Bunting*, 112 Or App 143, 146, 826 P2d 1060 (1992), we held that

"[a] person is subject to a 'basic needs' commitment * * * if clear and convincing evidence demonstrates that, due to a mental disorder, there is a likelihood that the person probably would not survive in the near future because the person is unable to provide for basic personal needs and is not receiving care necessary for health or safety."

Basic needs are "those things necessary to sustain life." *State v. Brungard*, 101 Or App 67, 71, 789 P2d 683, *mod* 102 Or App 509, 794 P2d 1257 (1990).

The state failed to present clear and convincing evidence meeting the *Bunting* standard. Indeed, the evidence showed that appellant is a generally self-sufficient individual, who, despite her mental illness, lives on her own, manages her own affairs, including paying her bills, is well groomed, and is generally well spoken. The state argues, nonetheless, that appellant is unable to provide for her basic need for food, and points particularly to the facts that, in the three months before the hearing, appellant had lost 10 pounds and that she

experiences difficulty with completing trips to the grocery store. Those facts, however, provide an insufficient basis for establishing appellant's inability to care for herself.

First, with respect to appellant's weight loss, there is no evidence of how much appellant weighs. Thus, we have no meaningful referent for the significance of the loss of 10 pounds over a period of several months. Nor, in a related sense, did the state adduce any evidence that the weight loss had adversely affected appellant's health, that it was likely to continue, or that, if it did, it was likely to affect her health in the immediate future. Second, although the evidence suggests that appellant's delusions have, on occasion, prevented her from completing errands, including grocery shopping, there is no evidence as to how frequently those episodes occur and whether they prevent appellant from obtaining an adequate supply of food. Indeed, appellant testified that, despite her delusions at the grocery store, she "paid [her] money and took [her] bags."

The state also argues that appellant's refusal to allow her caseworker to enter her condominium or to speak with him implicates her basic need for health care. Appellant's change in conduct toward her caseworker was a consequence of her Capgras Syndrome, *i.e.*, she perceived that different individuals were trying to impersonate him, which, in turn, caused her to be unsure of who was visiting or calling when her caseworker attempted to contact her. Here again, however, the record is deficient in that it does not show the consequences, if any, of the caseworker's inability to contact appellant. In particular, it is unclear whether appellant maintains contact with other persons besides the caseworker, including those who could provide, or arrange for her to receive, health care as needed. There is no evidence that appellant has failed to seek medical treatment when necessary.[3] Indeed, on at least one occasion less than a year before

---

[3] In response to a medical examiner's questions, appellant demonstrated that she is generally cognizant of her medical needs and appropriately attentive to them:

"Q: This record also indicates that you refused to take some other medication. Can you tell me about that?

"A: Well, sometimes they want to give me a shot or pills, but they have never helped me; it's meaningless.

"Q: * * * So you refuse them?

the hearing, appellant sought and received medical treatment for an earache.

■    There is a similar failure of proof as to the second basis for commitment, that appellant poses a danger to herself. The record discloses no incidents of appellant harming herself, engaging in dangerous behavior, or demonstrating any inclination or propensity to do so. Moreover, although appellant testified that she experiences "blackouts," there is no evidence as to the frequency, severity, or consequences of such episodes. Nor is there is any evidence that appellant has ever been endangered as a result of such episodes. Thus, the state has failed to demonstrate by clear and convincing evidence that appellant's mental disorder has "resulted in harm to [her]self or others or created situations likely to result in harm." *State v. Christofferson*, 47 Or App 1087, 1090, 615 P2d 1152 (1980); *accord State v. Stanley*, 117 Or App 327, 320, 843 P2d 1018 (1992) ("Apprehensions and speculations alone are not enough to find a person in need of treatment.").

Reversed.

---

"A:  Yes.

"Q:  Do you believe that that's true of any of the medications, that they don't help you?

"A:  Oh, I've had a couple of bad toothaches. I needed root canals and the doctor gave me some antibiotic and that helped. And the same thing for an ear infection. So occasionally the medicine has helped. But when I went to mental health, those pills and shots, they didn't do anything to relieve the stress or calm my nerves."