Argued and submitted September 14, reversed December 15, 1999

In the Matter of Veronica Ayala,
Alleged to be a Mentally Ill Person.

STATE OF OREGON,
*Respondent,*

*v.*

VERONICA AYALA,
*Appellant.*

(C980025MC; CA A101430)

991 P2d 1100

Susan D. Isaacs argued the cause and filed the brief for appellant.

Thomas C. Patton, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before De Muniz, Presiding Judge, and Haselton and Wollheim, Judges.

WOLLHEIM, J.

## WOLLHEIM, J.

Appellant seeks reversal of a judgment adjudicating her to be a mentally ill person and committing her to the Mental Health Division. ORS 426.130(1)(b)(C). The trial court committed appellant because her disorder made her unable to provide for her basic needs, and she was not receiving the care necessary for health and safety. ORS 426.005(1)(d)(B).[1] On *de novo* review, *State v. O'Neill*, 274 Or 59, 61, 545 P2d 97 (1976), we reverse.

Appellant is a 25-year-old female who suffers from schizoaffective disorder. She was previously committed and is required to take medications for her disorder. At the time of the commitment hearing in February 1998, appellant was approximately seven and one-half months pregnant.

At a prenatal appointment in early February, appellant was diagnosed with gestational diabetes. Her physician scheduled a follow-up appointment. Appellant needed to be tested to determine the severity of her diabetes and whether she would require medication to control it. Appellant appeared for the appointment, but the tests could not be performed because she had not fasted for the previous 12 hours. Another appointment was scheduled for a few days later. Appellant did not keep this appointment because she expected transportation to be provided by her services coordination assistant. The assistant could not provide transportation because appellant had failed to notify the assistant of appellant's new address. After failing to keep the appointment, appellant was held pending the outcome of her civil commitment hearing. Although appellant was held at the same hospital where she received prenatal care, appellant was never tested to determine the severity of her gestational diabetes.

---

[1] ORS 426.005(1) provides, in part:

"(d) 'Mentally ill person' means a person who, because of a mental disorder, is one or more of the following:

"* * * * *

"(B) Unable to provide for basic personal needs and is not receiving such care as is necessary for health or safety."

At the civil commitment hearing, the trial court heard testimony addressing appellant's mental disorder, changed conduct in response to her pregnancy, missed medical appointments, and housing problems. In their reports, two certified mental health examiners found that appellant suffered from a mental disorder, was a danger to others, and was unable to provide for her basic needs and was not receiving care necessary for health and safety. The examiners were split as to whether appellant was a danger to herself. Noticeably absent from the hearing was any evidence regarding the severity of appellant's gestational diabetes. The state also failed to present any expert testimony concerning the dangers generally posed by gestational diabetes or the specific risks for appellant and the fetus.

At the close of testimony, the trial court concluded that appellant was not a threat to herself or to others, but that her mental disorder was causing her to miss critical medical appointments and that this endangered the fetus. The trial court ordered appellant's commitment because she was "unable to provide for basic personal needs and not receiving such care as necessary for health and safety." Appellant assigns error to the trial court's conclusion and also assigns error to the trial court's holding that appellant endangered the fetus. Because we conclude that these arguments are dispositive, we do not address appellant's other arguments.

■■■ On *de novo* review, we examine the record to determine if the state has established by clear and convincing evidence that appellant was unable to provide for her basic needs. *State v. Johnson*, 131 Or App 561, 564, 886 P2d 42 (1994). Basic needs are those things necessary to sustain life. *State v. Brungard*, 101 Or App 67, 71, 789 P2d 683, *modified* 102 Or App 509, 794 P2d 1257 (1990), *rev den* 311 Or 427 (1991). Medical care for a life threatening condition is considered a basic need. *Id*. The threat to life must be likely to occur "in the near future." *State v. Jensen*, 141 Or App 391, 394-95, 917 P2d 541 (1996). Furthermore, the threat must be actual; a speculative threat is not sufficient for commitment. *State v. Bunting*, 112 Or App 143, 145, 826 P2d 1060 (1992).

■    There is a lack of evidence pertaining to the primary issue on which the trial court based its decision—gestational diabetes. The record contains no evidence that gestational diabetes is life threatening or would imminently harm appellant or the fetus. The state failed to call an expert witness qualified to testify about the dangers that gestational diabetes potentially posed for both appellant and the fetus. The trial court attempted to adduce such evidence by directly questioning the one certified mental health examiner called to testify:

> "THE COURT: Can you help the Court understand what gestational diabetes means? I'm asking gestational diabetes, would you put into the record what that is?

> "DR. GRANT: *I am not too familiar about diabetic conditions as relate to pregnancy,* but *apparently* it is something that does happen. And my express concern to the Court is that *if* she is not keeping her appointments and not being responsible in taking her medications, I really see her as compromising not only her own physical health, but the physical health of the unborn child. So that's my concern about stating that she is at risk to self.

> "THE COURT: All right. And those may be obvious and common sensical observations, but for the record, could you explain *medically* why her not getting care, you know, from your point of view, creates a medical risk?

> "DR. GRANT: *According to the witness, if* I remember correctly, she has missed appointments, has not taken medication, has not followed through, and has really been forgetful and not aware of the fact she needs to have laboratory studies to double check the condition of her baby's health, as well as her own, and she is not complying. And so this is the risk I see.

> "* * * * *

> "THE COURT: As I said, maybe it's just common sense."[2] (Emphasis added.)

The record also lacks any medical evidence concerning the severity of appellant's gestational diabetes. When appellant's

---

[2] We share the trial court's obvious frustration with the lack of medical evidence pertaining to gestational diabetes.

attorney asked Grant if there was evidence concerning the extent of appellant's gestational diabetes Grant replied:

> "*Not really*, except that *if her pregnancy is compromised* or complicated by a physical condition, I think that needs, in my opinion, *I would suspect* it needs close supervision and care. That's all I can say." (Emphasis added.)

Furthermore, there is an absence of evidence concerning the type of medical care necessary to treat appellant's gestational diabetes and whether appellant's mental disorder would prevent her from complying with a necessary treatment program. *See State v. Gjerde*, 147 Or App 187, 192, 935 P2d 1224 (1997) (state must prove a causal nexus between mental disorder and inability to meet basic needs).

■       Thus, the record is devoid of any evidence—much less clear and convincing evidence—that (1) appellant's gestational diabetes, if untreated, posed an immediate serious risk to her health or the health of the fetus; and (2) any failure to obtain treatment was the result of appellant's mental disorder. *Id.* Apprehensions, speculations and conjecture are not sufficient to prove a need for mental commitment. *See State v. Stanley*, 117 Or App 327, 330, 843 P2d 1018 (1992) (commitment not allowed based on apprehensions and speculations); *see State v. Nance*, 85 Or App 143, 145 n 2, 735 P2d 1271 (1987) (commitment not allowed based on conjecture).

■       The state attempts to fill that evidentiary gap by urging us to take judicial notice of texts describing generally the health risks posed by gestational diabetes. We decline to do so for two related reasons.

First, judicial notice must only be of a fact not subject to reasonable dispute and that is "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." OEC 201(b)(2). Here, as noted, the pertinent facts are *both* the dangers of gestational diabetes in *general* and the *specific* threat posed to appellant and the fetus from gestational diabetes. The treatise materials proffered by the state go only to *general* attributes of gestational diabetes and do not relate to appellant's specific circumstance, which necessarily requires expert medical testimony. *SAIF v. Calder*, 157 Or App 224, 227-28, 969 P2d

1050 (1998); *see also State v. Kennedy*, 95 Or App 663, 771 P2d 281 (1989) (expert testimony required for generalizations pertaining to the symptoms of a disease and effects of prescribed drug levels for a particular individual).

Second, relying on the state's materials, proffered for the first time on appeal, would effectively deprive appellant of her rights of confrontation and cross-examination. *Bend Millwork v. Dept. of Revenue*, 285 Or 577, 583-84, 592 P2d 986 (1979). Because appellant's liberty interests are at stake in this civil commitment proceeding, we decline to consider medical evidence tendered without the procedural protections of confrontation and cross-examination.

We conclude that, due to the absence of evidence concerning gestational diabetes and the specific threat it posed to appellant and the fetus, there was not clear and convincing evidence that appellant was unable to provide for her basic personal needs or that she was not receiving such care as was necessary for her health or safety.

Reversed.