Argued and submitted December 11, 2001, reversed April 10, 2002

In the Matter of Hung Nguyen,
Alleged to be a Mentally Ill Person.

STATE OF OREGON,
*Respondent,*

*v.*

HUNG NGUYEN,
*Appellant.*

30-00-16237; A111513

43 P3d 1218

James J. Kolstoe argued the cause and filed the brief for appellant.

David F. Coursen, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Haselton, Presiding Judge, and Linder and Wollheim, Judges.

WOLLHEIM, J.

**WOLLHEIM, J.**

Appellant appeals a judgment adjudicating him to be a mentally ill person and committing him to the Mental Health Division. The trial court committed appellant because his mental disorder made him a danger to himself and made him unable to provide for his basic personal needs and receive the care necessary for his health and safety. ORS 426.005(1)(d)(A), (B). On *de novo* review, we reverse. *State v. O'Neill*, 274 Or 59, 61, 545 P2d 97 (1976).

In July 2000, appellant was voluntarily admitted to the Lane County Psychiatric Hospital (LCPH) after going to another hospital's emergency room on several occasions "with vague complaints of muscle and body pains and somehow or another being assaulted or attacked although there was no evidence of this." Appellant had been hospitalized in psychiatric hospitals around the country, the last being in May 2000. Upon admission to LCPH, appellant was diagnosed with schizophrenia, hypercholesterolemia,[1] hypertriglyceridemia,[2] and noninsulin dependent diabetes.[3]

Appellant was initially treated at LCPH on a voluntary basis. In August 2000, however, appellant began to refuse his medications and demanded to leave. Appellant's attending psychiatrist, Dr. Webb, believed that appellant's personal health and safety were at risk if he were to leave. An involuntary hold was then placed on appellant.

At the time of the hearing, appellant was 34 years old, his blood sugars were as high as 300, and his cholesterol level was in the 600 range. Annagret Hoffman, a staff nurse at LCPH, testified that appellant denies being mentally ill and denies having diabetes. Hoffman further testified that appellant is paranoid and delusional and refuses to take his medications for either condition. According to Hoffman,

---

[1] "Hypercholesterolemia" is defined as, "[t]he presence of an abnormally large amount of cholesterol in the cells and plasma of the circulating blood." *Stedman's Medical Dictionary*, 823 (26th ed 1995).

[2] "Hypertriglyceridemia" is defined as, "[e]levated triglyceride concentration in the blood." *Stedman's Medical Dictionary* at 832.

[3] Appellant's medical records from past hospitalizations diagnosed the same conditions.

appellant is unable to care for his basic needs because he denies having a mental illness and thus, if discharged, would be unable to control his diabetes.

Dr. Allcott, in a report regarding appellant's diabetes, concluded:

*"Though not a fatal threat to his life,* if left untreated, his diabetes and hyperlipidemia will give less morbidity in a stable social situation. Continuing medication for diabetes is helpful but actually, in my view, less important than achieving a stable residential and, consequently, a stable diet, the centerpiece of diabetic treatment in this adult-onset diabetic man." (Emphasis added.)

Greg Sulliger, a certified mental health examiner, concluded in his report:

"The medical records reports numerous medical problems the most serious is diabetes. He should be taking oral medication but because of his mental illness and paranoid thinking he refuses all medication. *Although the diabetes is not considered life threatening at this point it will be harmful to him over the long run.*" (Emphasis added.)

When questioned by the court about his conclusion that appellant is dangerous to himself, Sulliger testified:

"Right now, his diabetes can be controlled with diet and oral medication. That isn't going to be the case if he continues on. He'll be Insulin dependent. He certainly, in my opinion, is dangerous to himself because he's not able to attend to and understand his very serious illness. While not life threatening right now, it is certainly a danger to his health, and will continue to be. He can go blind, he can lose limbs within a matter of years. If that's not dangerous, it is in my book."

The trial court concluded that appellant should be committed on the grounds that he is a danger to himself and, outside the institutional setting, is unable to provide for his basic personal needs and is not receiving care necessary for his health or safety. Appellant was committed to the custody of the Mental Health Division.

On appeal, appellant argues that there is insufficient evidence to conclude that he is dangerous to himself. The

state argues that appellant is dangerous to himself because he has serious medical problems that he does not address when he is not taking his medications. We agree with appellant. "Evidence of general mental and physical deterioration is insufficient to justify a finding of mental illness under the danger to self standard." *State v. Jacobson*, 142 Or App 371, 377, 922 P2d 670 (1996). The state must present clear and convincing evidence that a person's mental disorder has resulted in harm " 'or created situations likely to result in harm.' " *State v. Sea*, 137 Or App 333, 338, 904 P2d 182 (1995) (quoting *State v. Christofferson*, 47 Or App 1087, 1090, 615 P2d 1152 (1980)).

██ There is no evidence in the record that appellant's noninsulin dependent diabetes is currently life threatening or will immediately harm him. In fact, the state conceded at oral argument that appellant's diabetes and failure to treat his diabetes does not present a life endangering threat within the near future. Although the danger to self standard does not require a threat of immediate harm, the threat must exist in the near future. *Jacobson*, 142 Or App at 377. All the evidence indicates that it will be years before his diabetes will be life threatening and then only if he continues to act in the same manner by not controlling his diet or not taking his diabetes medication. "Apprehensions, speculations and conjecture are not sufficient to prove a need for mental commitment." *State v. Ayala*, 164 Or App 399, 404, 991 P2d 1100 (1999). Further, appellant's elevated triglycerides and cholesterol levels are insufficient to establish a danger to self because there is nothing in the record to put those numbers into context. *See id.* (commitment order premised mainly on the appellant's inability to obtain proper care and treatment for gestational diabetes was not supported by clear and convincing evidence where the record contains no evidence that condition was life-threatening or would immediately harm the appellant or her fetus).

The state also points to evidence that, in prior psychiatric hospitalizations in other states, appellant's medical records indicate suicidal ideation as part of his condition. Hoffman testified that appellant is "pressing for discharge [and o]ne of his quotes is: 'Do you want me to get a gun to kill? I need to get out.' " Appellant's comment about getting a "gun

to kill" expressed appellant's resistence to commitment and does not provide a clear and convincing basis for commitment. *State v. Blanding*, 174 Or App 238, 242, 23 P3d 436 (2001), provides:

> "There is no evidence that appellant had any access to weapons or that [he] had ever attempted to harm [him]self. Rather, in context, we regard appellant's statement as merely 'venting' apprehension, frustration, and opposition to being involuntarily confined. That is insufficient to warrant civil commitment."

The record lacks clear and convincing evidence that appellant is a danger to himself.

■        Appellant also challenges the trial court's conclusion that he is unable to provide for his basic needs. "Basic needs are 'those things necessary to sustain life.' " *Sea*, 137 Or App at 336 (citing *State v. Brungard*, 101 Or App 67, 71, 789 P2d 683, *mod on recons* 102 Or App 509, 794 P2d 1257 (1990), *rev den* 311 Or 427 (1991)). In *State v. Bunting*, 112 Or App 143, 146, 826 P2d 1060 (1992), we held that

> "[a] person is subject to a 'basic needs' commitment * * * if clear and convincing evidence demonstrates that, due to a mental disorder, there is a likelihood that the person probably would not survive in the near future because the person is unable to provide for basic personal needs and is not receiving care necessary for health or safety."

The state argues that appellant cannot meet any of his basic needs unless he is committed because he lives on social security and is a transient, moving from shelter to shelter, hitchhiking around the country. The state further argues that appellant lacks support from family or friends and thus has no logical source for help in meeting his basic needs. The state's argument is that, when appellant does not take his psychiatric medication, he is so disoriented that he is unable to care for his basic needs or is vulnerable to attack by others. The state also argues that, until appellant's psychiatric condition is stabilized, he remains in denial about his mental illness and the need to take psychiatric medication. According to the state, if appellant is discharged, he is immediately going to revert into the delusional cycle, putting him at risk.

■■        In *Bunting*, we held that the state must prove that, due to the appellant's mental disorder, he is "unable to obtain

some commodity (*e.g.*, food and water) or service (*e.g.*, life saving medical care) without which he cannot sustain life." 112 Or App at 145. Failure to take prescribed medication, by itself, "is not sufficient if it causes only a speculative threat." *State v. Baxter*, 138 Or App 94, 98, 906 P2d 849 (1995). Furthermore, "[a] person's ability to care for [him]self is assessed in the light of existing, as opposed to future or potential, conditions." *State v. Headings*, 140 Or App 421, 426, 914 P2d 1129 (1996).

There is evidence in the record that, when appellant is not hospitalized, his condition deteriorates to the point where he requires hospitalization to stabilize himself again. That continuing pattern is a concern but it is not sufficient to justify a basic needs commitment. There is no evidence that appellant has failed to seek medical treatment when necessary. In fact, despite his delusions, appellant voluntarily sought treatment at a hospital.

Although appellant obviously suffers from delusions when he is not taking his medication and has a demonstrated history of poor compliance with treatment, the record lacks clear and convincing evidence that appellant's inability to acknowledge his condition when not taking his medication prevents him from meeting his basic needs—*i.e.*, food, water, shelter, and life saving medical treatment. *See State v. White*, 155 Or App 288, 963 P2d 107 (1998). "It is not the state's prerogative, under the civil commitment statutes, to interfere with a person's choice of lifestyle, even if that choice is not one 'that everyone would make.' " *State v. DeMartino*, 164 Or App 331, 335, 991 P2d 1093 (1999) (quoting *State v. Gjerde*, 147 Or App 187, 192, 935 P2d 1224 (1997)).

The state has failed to demonstrate that it is highly probable that appellant's mental illness will prevent him from providing the basic needs of food and shelter for himself. Further, nothing in the record establishes that appellant will not survive in the near future. We therefore conclude that the state failed to establish that appellant was unable to provide for his basic personal needs.

Reversed.