Argued and submitted April 8, reversed June 12, 2002

In the Matter of Jack Turel,
Alleged to be a Mentally Ill Person.

STATE OF OREGON,
*Respondent,*

*v.*

JACK TUREL,
*Appellant.*

0002-62248; A109741

48 P3d 175

Harrison Latto argued the cause and filed the brief for appellant.

Brendan C. Dunn, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Haselton, Presiding Judge, and Linder and Wollheim, Judges.

WOLLHEIM, J.

## WOLLHEIM, J.

Appellant appeals a judgment adjudicating him to be a mentally ill person and committing him to the Mental Health Division. The trial court committed appellant because his mental disorder made him unable to provide for his basic personal needs, and he was not receiving the care necessary for his health or safety. ORS 426.005(1)(d)(B).[1] On *de novo* review, *State v. O'Neill*, 274 Or 59, 61, 545 P2d 97 (1976), we reverse.

At the time of hearing, appellant was 68 years old and had been a resident of the Gracelen Terrace Residential Care Center (the care center) for 13 years. Appellant suffers from multiple medical problems, which include cerebral palsy, Parkinson's disease, a right hip fracture that interferes with his ability to ambulate independently and requires the use of a wheelchair, and chronic psoriasis. Appellant has had chronic psoriasis for approximately 7 to 10 years, but it had become acute for more than six months prior to appellant's hearing and had worsened during that time. Appellant's condition has resulted in blood and lymph seepage on his lower and upper extremities, and it is "creeping up his body." Appellant continually picks and scratches at his open wounds so that scabs and body fluids are left everywhere he goes, which includes contact with other residents and staff members.

Appellant had also been diagnosed as suffering from paranoid schizophrenia, and he is delusional. As a result of his worsening delusions, he is refusing medications from his registered nurse (RN) at the care center because he believes that the RN is the devil. He also refuses treatment because he believes he is on a special mission from God. Because of

---

[1] ORS 426.005(1)(d) provides, in part:

" 'Mentally ill person' means a person who, because of a mental disorder, is one or more of the following:

"(A) Dangerous to self or others.

"(B) Unable to provide for basic personal needs and is not receiving such care as is necessary for health or safety."

appellant's delusions and his refusal of treatment, his condition is deteriorating and has kept caregivers from providing care to appellant's roommates.

Josanne Stedmann, the director of social services at the care center, and Ai Le, the primary RN at the care center, filed a two-person notification of mental illness pursuant to ORS 426.070(1)(a).[2] The precommitment investigator's report stated that appellant became angry when the investigator raised some concerns about his condition, and he denied that he had a problem. Appellant specifically stated that he would refuse to take medication for his condition, that his psoriasis was "nobody else's business," and that he intended to continue to refuse assistance from caregivers.

At hearing, Stedmann testified that appellant had "threatened and been physically aggressive with" the staff. Also, there had been occasions where he pushed his wheelchair into others and threw water at the water fountain because someone was in his way.

When appellant was questioned by the court about whether he needed help from others, he responded that he only needed help getting from his wheelchair into a car and occasionally getting from the bed to the wheelchair. He admitted that he cannot dress himself. He stated that he wanted to remain at the care center and that he would abide by the facility's rules "if they make common sense."

When one of the examiners appointed by the court to examine appellant asked appellant what he would do if he were evicted from the care center, appellant responded that "[t]hat would never happen." The trial court asked a similar question about whether he had a plan if evicted, and appellant said he was not worried about that and that "[w]hat will happen, will happen" and that, "if I don't have a plan, the future will take care of itself."

---

[2] ORS 426.070(1)(a) provides,

"Any of the following may initiate commitment procedures under this section by giving the notice described under subsection (2) of this section:

"(a) Two persons[.]"

The trial court asked Stedmann if the care center would keep appellant if he continued to refuse help. Stedmann answered, "[t]hat will be a fork in the road, as I have explained to [appellant]." Stedmann was later asked by one of the court-appointed examiners whether the care center would keep appellant if the judge released him back to the care center. Stedmann essentially responded that she did not know and deferred to a nurse in charge of appellant's medications. That nurse then made the following statement,

> "I think it's a very difficult question for me because we—I am the RN and I am the resident care manager. I am not in a position that can say we will or we will not accept him, because it's a regulation that we had to accept originally. If they have been here, we have to accept them, and we have to continue to give care for them. * * * [W]e have to give a notice of 30 days for eviction. That is all we have to do. And that is through the administrator in the front office (indiscernible). We just try to give the best care, and we try to make sure (indiscernible) receive the care that he needs and he is (indiscernible)."

Both court-appointed examiners believed that appellant was mentally ill and that he was unable to provide for his own basic needs. The trial court agreed, finding that appellant was "unable to care for himself *without assistance*." (Emphasis added.) The trial court therefore ordered appellant's commitment to the custody of the Mental Health Division for a period not to exceed 180 days.

On appeal, appellant argues that there is insufficient evidence to find that he cannot provide for his own basic needs and that he is not receiving the care necessary for his health or safety.[3] The state argues that, not only is appellant unable to provide for his own basic needs, but he is also a danger to himself and to others.

 We first address whether appellant is capable of providing for his own basic needs. "Basic needs are 'those things necessary to sustain life.'" *State v. Sea*, 137 Or App 333, 336,

---

[3] Appellant also raises three other assignments of error, which are all procedural, relating to his commitment. Those assignments of error were not preserved, and we therefore do not address them. *State v. Hitz*, 307 Or 183, 766 P2d 373 (1988).

904 P2d 182 (1995) (citing *State v. Brungard*, 101 Or App 67, 71, 789 P2d 683, *mod on recons* 102 Or App 509, 794 P2d 1257 (1990), *rev den* 311 Or 427 (1991)).

> "A person is subject to a 'basic needs' commitment * * * if clear and convincing evidence demonstrates that, due to a mental disorder, there is a likelihood that the person probably would not survive in the near future because the person is unable to provide for basic personal needs and is not receiving care necessary for health or safety." *State v. Bunting*, 112 Or App 143, 146, 826 P2d 1060 (1992).

The record in this case demonstrates that appellant suffers from a mental disorder, and appellant conceded that point. However, the record lacks clear and convincing evidence that appellant is unable to provide for his basic personal needs or that he was not receiving care necessary for health or safety. For the past 13 years, appellant has resided at the care center where all of his basic needs, including food, clothing, and shelter, have been met. Appellant concedes that he could not live independently if evicted from the care center, but there is no evidence that, if not committed, the care center would evict appellant. Without testimony to that effect, the record lacks clear and convincing evidence that appellant is unable to provide for his basic needs. *See State v. Headings*, 140 Or App 421, 426, 914 P2d 1129 (1996) ("A person's ability to care for [him]self is assessed in the light of existing, as opposed to future or potential, conditions.").

The state argues that appellant's "basic need" of caring for his chronic psoriasis is not being satisfied because he resists treatment and care for that condition. In *Bunting*, we held that the state must prove that, due to appellant's mental disorder, he is "unable to obtain some commodity (*e.g.*, food and water) or service (*e.g.*, life-saving medical care) *without which he cannot sustain life*." 112 Or App at 145 (emphasis added). The state has failed to produce clear and convincing evidence that appellant's refusal to treat his psoriasis will threaten his survival in the future. Therefore, the record lacks clear and convincing evidence that appellant cannot provide for his own basic needs and is not receiving care necessary for his health or safety.

■ The state also argues that commitment was appropriate and that the trial court was right for the wrong reason, because appellant is a danger to himself and to others. ORS 426.005(1)(d)(A). The state specifically relies on Stedmann's testimony at the hearing:

> "Also, because of his condition, as the body fluid seepage, this is a threat to staff and other residents. And also because of his refusal of psychotropic meds, he is behaving in a way that is refusing to let caregivers care for the other residents in the room. Which, of course, they are—they rightfully have a reason to have care.
>
> "Also, he has threatened and been physically aggressive with our staff. And [appellant's] frustration level is lowering his tolerance to handle frustration, such that there have been times when he is pushing his wheelchair into others or throwing water at the water fountain because someone is in his way. And, right now, these are minimal behaviors compared to some of the things we deal with here. Yet, because [appellant] has a toehold in the area of control, it makes it a significant challenge as compared to many of our other residents who also are in similar situations and are not able to speak so adamantly."

Thus, based on Stedmann's testimony, the state argues that the fluids from appellant's untreated psoriasis and his affinity for running his wheelchair into others demonstrates that he is dangerous to others. We disagree. The record lacks any medical evidence regarding the nature or magnitude of any risk of infection to others from appellant's loss of body fluids. Further, evidence regarding the danger appellant might pose to others when he runs his wheelchair into them is likewise lacking.

■ The state also argues that appellant's untreated psoriasis constitutes a danger to himself. We again disagree. The state must present clear and convincing evidence that a person's mental disorder has resulted in harm " 'or created situations likely to result in harm.' " *Sea*, 137 Or App at 338 (quoting *State v. Christofferson*, 47 Or App 1087, 1090, 615 P2d 1152 (1980)). On this record, there is no evidence that appellant's psoriasis is currently life threatening or will immediately harm him. In fact, the state conceded at oral argument that appellant's psoriasis, and his failure to treat

it, do not present a life endangering threat in the near future. *See State v. Jacobson*, 142 Or App 371, 377, 922 P2d 670 (1996) (although danger to self standard does not require a threat of immediate harm, the threat must exist in the near future). Further, appellant's open wounds and the fact that he picks at them are insufficient to establish a danger-to-self commitment because there is nothing in the record to put that in context as to how that could present a life-threatening condition. *See State v. Ayala*, 164 Or App 399, 404, 991 P2d 1100 (1999) ("Apprehensions, speculations and conjecture are not sufficient to prove a need for mental commitment.").

The state failed to prove by clear and convincing evidence that appellant is unable to provide for his basic personal needs and is not receiving such care as is necessary for his health or safety. Nor does the record support a commitment under the danger to self or others standard. Although appellant suffers from a mental disorder, that is not enough to subject him to involuntary commitment.

Reversed.