Argued and submitted August 17, reversed October 12, 2005

## In the Matter of Tina L. Hayes,
## Alleged to be a Mentally Ill Person.

### STATE OF OREGON,
### *Respondent,*

*v.*

### TINA L. HAYES,
### *Appellant.*

### 30-04-16356; A126119

121 P3d 17

James J. Kolstoe argued the cause and filed the brief for appellant.

Anna M. Joyce, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Haselton, Presiding Judge, and Brewer, Chief Judge, and Rosenblum, Judge.

HASELTON, P. J.

**HASELTON, P. J.**

Appellant seeks reversal of an order adjudicating her to be a mentally ill person and committing her to the Mental Health Division. ORS 426.130(1)(b)(C). She asserts that the state failed to prove, by clear and convincing evidence, that, because of a mental disorder, she was a danger to herself or others or was unable to provide for her basic needs. ORS 426.005(1)(d).[1] On *de novo* review, *State v. O'Neill*, 274 Or 59, 61, 545 P2d 97 (1976), we reverse.

Appellant is a 49-year-old woman who has been diagnosed with a schizoaffective disorder. As a result of that disorder, she is paranoid and delusional. Appellant experiences auditory hallucinations—*i.e.*, she hears "voices" that urge her to act out sexually—claims to be able to read minds, and is verbally aggressive and threatening. From June 2002 until her hospitalization in August 2004, which precipitated these proceedings, appellant did not take medication for her mental disorder.

Appellant also has diabetes; however, the record does not disclose the nature or severity of that condition. Appellant also refuses to take medication for her diabetes and refuses to cooperate in testing related to her diabetes; again, however, the record does not disclose probable, or even possible, consequences of that refusal and noncooperation.

In August 2004, appellant was arrested and charged with indecency and sexual assault of an animal, her puppy. Although a witness described that incident as "disturbing," the record does not disclose the details of appellant's conduct, which, apparently, was in response to her inner "voices." Contemporaneously with her arrest, and as a result of indecent and "[n]oisy behavior," appellant was evicted from her

---

[1] ORS 426.005(1)(d) provides, in part:

" 'Mentally ill person' means a person who, because of a mental disorder, is one or more of the following:

"(A) Dangerous to self or others.

"(B) Unable to provide for basic personal needs and is not receiving such care as is necessary for health or safety."

apartment. Appellant's arrest led to an emergency hospitalization for mental illness, which, in turn, led to these proceedings.

At the commitment hearing, the state presented evidence establishing the facts just described. Appellant's own statements at the hearing were hostile, and she regularly interrupted the testimony of the other witnesses. Appellant claimed that the doctors were lying about her and that she has always been able to take care of herself on her own. In addition, appellant made various statements regarding eating and drinking, the substance and significance of which we address below in our discussion of the "basic needs" criterion. *See* 202 Or App at 69-70.

The examiner concluded that, due to a mental disorder, appellant was dangerous to herself, dangerous to others, and unable to meet her basic needs. The trial court concurred and, accordingly, committed appellant pursuant to ORS 426.130(1)(b)(C).

On appeal, appellant does not challenge the trial court's determination that she suffers from a mental disorder. Conversely, the state concedes that the record does not support the trial court's determination that appellant is a danger to others. We accept that concession as well founded. Accordingly, our inquiry reduces to whether the evidence establishes either of the trial court's alternative determinations that, as a result of her mental disorder, appellant is unable to meet her basic needs or is dangerous to herself. Because we determine that the record does not support either conclusion, we reverse.

■ We emphasize, at the outset, that the standard of proof is "clear and convincing" evidence. ORS 426.130(1)(b). To be "clear and convincing," evidence must be of "extraordinary persuasiveness." *State v. Howell*, 53 Or App 611, 617, 633 P2d 14 (1981); *see also State v. Jayne*, 174 Or App 74, 77-78, 23 P3d 990, *rev den*, 332 Or 316 (2001) (describing "clear and convincing evidence" as evidence establishing that "the truth of the facts asserted is highly probable").

■ We begin with the "basic needs" criterion. "Basic needs are those things necessary to sustain life." *State v.*

*Brungard,* 101 Or App 67, 71, 789 P2d 683, *modified on recons,* 102 Or App 509, 794 P2d 1257 (1990), *rev den,* 311 Or 427 (1991). Because "[t]he goal of the commitment statute is safe survival, not merely the avoidance of immediate death," the state, in invoking the "basic needs" criterion, "need not postpone action until the individual is on the brink of death." *State v. Bunting,* 112 Or App 143, 145, 826 P2d 1060 (1992). Nevertheless, the state must show that appellant *"probably would not survive in the near future* because [she] is unable to provide for basic personal needs and is not receiving care necessary for health or safety." *Id.* at 146 (emphasis added).

■        Here, the state points to appellant's homelessness, her diabetic condition, her refusal to take medication, and her comments about eating and drinking. However, those circumstances, either individually or collectively, are insufficient to demonstrate the requisite inability to provide for basic needs.

Homelessness is not, by itself, sufficient grounds for commitment. *State v. Baxter,* 138 Or App 94, 99, 906 P2d 849 (1995). Here, it is undisputed that appellant was evicted from her apartment and that her prospects of finding housing upon release were, at best, uncertain. Nevertheless, the record is devoid of any evidence that appellant, if homeless, "probably would not survive in the near future," *Bunting,* 112 Or App at 146, because of that circumstance either by itself or in combination with other circumstances.

The record is similarly deficient with respect to appellant's diabetic condition. As noted, the record does not disclose the nature or severity of appellant's diabetes, much less the consequences that she would likely suffer in the near future from her continued refusal to take medication or cooperate in testing. Thus, this case is materially indistinguishable from *State v. Ayala,* 164 Or App 399, 991 P2d 1100 (1999). In *Ayala,* we reversed an order of civil commitment based on an alleged inability to provide for basic needs where there was no evidence that "appellant's gestational diabetes, if untreated, posed an immediate serious risk to her health or the health of the fetus." *Id.* at 404; *cf. State v. Nguyen,* 180 Or

App 541, 545, 43 P3d 1218 (2002) (where "[t]here is no evidence in the record" that an alleged mentally ill person's diabetic condition is "currently life threatening" or presents a threat in the near future, evidence is insufficient to meet the "dangerous to self" standard).[2]

In a related vein, the state also refers to appellant's refusal to take medications—not only medication for her diabetes but also medication for her mental disorder. In *State v. Cunningham*, 190 Or App 202, 211, 78 P3d 125 (2003), we held that "[t]he refusal to take medication is not sufficient, by itself, to prove an inability to provide for basic personal needs * * *." Rather, what is required is persuasive evidence that the alleged mentally ill person "cannot function without medications." *Id.; see also State v. Blanding*, 174 Or App 238, 242, 23 P3d 436 (2001) (reversing "basic needs"-based order of civil commitment where the state "failed to produce evidence that appellant's refusal to take her medication will threaten her survival in the future"). Thus, the state must demonstrate that the failure to take medication so impairs the appellant's ability to provide for basic needs of adequate nourishment, shelter, and necessary medical treatment as to jeopardize her probable survival in the near future. *See Nguyen*, 180 Or App at 547.

Here, the evidence established that appellant had not been taking medication for her mental disorder since June 2002—a period of more than two years. However, there was no evidence that that failure had, in fact, materially impaired her ability to meet her basic needs during that time or jeopardized her ability to survive in the near future. Accordingly, that failure does not support a "basic needs" commitment. *See State v. Hitt*, 179 Or App 563, 571, 41 P3d 434 (2002) (potential that person might not maintain prescribed medications was insufficient to justify "basic needs"-based commitment).

The state next emphasizes various statements by appellant at the commitment hearing as evidence that she is unwilling, or unable, to obtain food or water. At the hearing,

---

[2] Indeed, in *Nguyen*, unlike in this case, there was some evidence about the probable "long run" consequences if the appellant's diabetes was not properly treated. *See* 180 Or App at 544-45.

appellant interrupted the proceedings to make the following comments:

> "I took care of myself pretty darned good. All you guys are doing is trying to make work. And if you guys want to make work so will I. And that's not by taking care of myself.
>
> "All I do is drink a little and I don't eat nothing. Because if you guys don't want to show kindness to me, there's no reason to enjoy food because there's nothing enjoyment in being court committed for a crime of nothing that I've done.
>
> "\* \* \* \* \*
>
> "\* \* \* That's all I have to say. Other than there's no more food. All there is is a little water to keep me from not feeding me."

The state construes those statements as an explicit declaration of appellant's determination not to eat or drink. We think that the state misunderstands appellant's intentions. Rather than expressing a general unwillingness or inability to obtain nourishment, appellant's statements conveyed a threat that she intended to carry out only under specific circumstances: if appellant is going to be held against her will, she is not going to cooperate and will not eat. Statements that merely express resistance to being involuntarily confined do not support commitment even if they are couched in self-destructive terms. *Cf. Nguyen*, 180 Or App at 545-46 (statement, "Do you want me to get a gun to kill? I need to get out," expressed resistance to commitment rather than suicidal tendencies and did not support commitment); *Blanding*, 174 Or App at 242 (the appellant's comment that she would rather shoot herself than go back to the hospital was "merely 'venting' apprehension, frustration, and opposition to being involuntarily confined").

Nothing in the record supports the inference that appellant would refuse to eat or drink if she were not committed. There is no evidence that she had ever actually refused nourishment. To the contrary, appellant indicated that, before being hospitalized, she "took care of [her]self pretty darned good." There is no reason to believe that, if

released, she would not continue to take care of her nourishment needs. We conclude that the statements relied on by the state cannot support a "basic needs"-based commitment.

In sum, none of the circumstances that the state invokes to support a "basic needs"-based commitment is individually sufficient. Nor are those circumstances collectively sufficient. That is, nothing in the record suggests, much less demonstrates, that there is some cross-exacerbating dynamic among the individual factors that somehow renders "the whole greater than the sum of the parts."

■■ We turn, then, to the sufficiency of the state's proof with respect to the "dangerous to self" criterion. To establish that appellant is dangerous to herself, the state must show that appellant's mental disorder has "resulted in harm to [her]self * * * or created situations likely to result in harm." *State v. Christofferson*, 47 Or App 1087, 1090, 615 P2d 1152 (1980); *see also State v. Sea*, 137 Or App 333, 338, 904 P2d 182 (1995). Although "the danger to self standard does not require a threat of immediate harm[,]" "consistent with the basic needs standard, the threat must exist in the near future." *State v. Jacobson*, 142 Or App 371, 377, 922 P2d 670 (1996). Thus, "[e]vidence of general mental and physical deterioration is insufficient to justify a finding of mental illness under the danger to self standard." *Id.*

The state relies on the same evidence just addressed with respect to basic needs, with one significant addition—appellant's inner "voices" that urge her to act out in sexually inappropriate ways and her response to those "voices." For the same reasons that the circumstances previously addressed were insufficient to establish that appellant was unable to provide for her basic needs, they are also insufficient to show that appellant is "dangerous to self." *Cf. Jacobson*, 142 Or App at 377 (noting that "consistent with the basic needs standard," for purposes of the dangerous to self criterion, "the threat must exist in the near future"). *Compare Nguyen*, 180 Or App at 545, *with Ayala*, 164 Or App at 404 (applying virtually identical analyses in determining that, because of lack of proof regarding nature and severity of the allegedly mentally ill person's diabetic condition, person's failure to take medication for that condition did not support

commitment on "basic needs" ground (*Ayala*) or "dangerous to self" ground (*Nguyen*)).

Appellant's response to her inner "voices" is, frankly, more troubling. The difficulty we confront, however, is that the record discloses very little about that matter. Because certain descriptions of appellant's conduct resulting in her arrest for indecency and sexual assault of an animal were properly excluded as inadmissible evidence, the record discloses only the following facts: (1) appellant's mental disorder renders her delusional, paranoid, and volatile; (2) appellant is verbally abusive and threatening, but there is no evidence that she has engaged in actually assaultive behavior; (3) as a result of the mental disorder, appellant has, in her words, "heard voices all of my life," urging her to engage in a variety of undisclosed sexual behaviors; and (4) in apparent response to those auditory hallucinations, appellant engaged in "disturbing" conduct with her "young puppy" that resulted in her arrest.

From the record, we cannot discern whether appellant's conduct with the puppy actually resulted in any harm to appellant or even could have resulted in harm. Nor does the record disclose that appellant has *ever* been harmed as a result of any previous sexual behavior in response to her "voices." In sum, on this record, concern about potential future dangers to appellant from acting in response to her auditory hallucinations is too attenuated and speculative to satisfy the "clear and convincing" standard. *See State v. Webb*, 186 Or App 404, 409-10, 63 P3d 1258 (2003) (where young woman repeatedly rode her bicycle nude in "unsavory" neighborhoods, but had never been assaulted while engaging in such conduct, concerns about "the potential danger of assault" were insufficient to justify "dangerous to self"-based commitment: "The problem is that, on this record, there is at best only a possibility of such harm."); *State v. Roberts*, 183 Or App 520, 525, 52 P3d 1123 (2002) (although the appellant evidently wandered in the streets, the record was insufficient to support commitment because it "contains no indication that this activity has ever led to injury"). *See generally Ayala*, 164 Or App at 404 ("Apprehensions, speculations and

conjecture are not sufficient to prove a need for mental commitment.").

  Reversed.