Submitted on record and briefs February 13, reversed March 12,
petition for review denied July 2, 2008 (345 Or 94)

In the Matter of J. G.,
Alleged to be a Mentally Ill Person.

STATE OF OREGON,
*Respondent,*

*v.*

J. G.,
*Appellant.*

Multnomah County Circuit Court
061071050; A133969

180 P3d 63

Lance D. Perdue filed the brief for appellant.

Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, and Judy C. Lucas, Senior Assistant Attorney General, filed the brief for respondent.

Before Haselton, Presiding Judge, and Armstrong and Schuman, Judges.

HASELTON, P. J.

**HASELTON, P. J.**

Appellant in this mental commitment case appeals a judgment committing her to the Mental Health Division for treatment for a period of time not to exceed 180 days. ORS 426.130. The trial court found that appellant suffers from a mental disorder and is a danger to herself. On *de novo* review, we reverse appellant's commitment.

■ On appeal, appellant argues that the record lacks clear and convincing evidence that she is a danger to herself. We agree. The present commitment commenced when a neighbor in an apartment near appellant's apartment found her lying outside the apartment with her eyes open, but completely unresponsive. The neighbor called 9-1-1, and paramedics arrived and roused appellant, at which point she became agitated. The neighbor testified that the police then arrived and "[t]hey had dealt with her many times in the past, so they know a few cute things that when [appellant] is like [that] they can talk to her about, her painting or her cello, and she kind of gets off of her agitated stage and can talk to you about those things." The neighbor further testified that when the police took appellant into protective custody, she was yelling and upset, and the police handcuffed her and strapped her to a gurney.

An outreach worker for Project Respond testified that he and a police officer had checked up on appellant at her apartment approximately a week before the present commitment, and she initially would not let them in, "but when the police officer, who always accompanies us on these kinds of calls who knew the client, said he would give her a cigarette, she let us in." On that occasion, as well, appellant was relatively cooperative until she was handcuffed and taken into protective custody, at which point she screamed and resisted.

At the commitment hearing, one of the mental health examiners found appellant to be dangerous to others and unable to provide for her basic needs. The other mental health examiner concluded that she was not a danger to herself or others and was able to provide for her basic needs. The trial court disagreed with both, concluding that appellant

was a danger to herself because of her uncooperativeness and agitation when taken into custody: "The court can take absolute judicial notice today that fighting with the police, with unknown police officers in Multnomah County, is certainly something that puts mentally ill people at risk of death or serious physical injury." The court commented on the then-recent death of James Chasse, stating that Chasse, an unarmed mentally ill person, "was confronted by the police, and he was beaten to death."

██ A court may order commitment if it finds clear and convincing evidence that, because of a mental disorder, the individual is "[d]angerous to self." ORS 426.005(1)(d)(A). The question is whether the individual's mental disorder would cause her to engage in behavior that is likely to result in physical harm to herself in the near future. *State v. Webb*, 186 Or App 404, 409, 63 P3d 1258 (2003). The evidence of the danger must be of "extraordinary persuasiveness." *State v. Siebold*, 100 Or App 365, 366, 786 P2d 219 (1990).

██ This court has never indicated that a person's agitation or lack of cooperation when being taken into custody, in and of itself,[1] renders a person dangerous to herself on the ground that those taking her into custody might kill or harm her. *Cf. State v. R. H.*, 212 Or App 479, 157 P3d 1286 (2007) (appellant's threats to kill officer who took him into protective custody did not establish by clear and convincing evidence that he was a danger to others). The abstract possibility that a person's bizarre and agitated behavior might theoretically draw a violent response from someone cannot satisfy the requirement that the threat of harm be real, rather than speculative, and "exist in the near future." *State v. Nguyen*, 180 Or App 541, 545, 43 P3d 1218 (2002). A generalized concern that a person is in a situation in which she may be vulnerable to assault is not enough. *See Webb*, 186 Or App at 409 (appellant who rode bicycle in the nude in unsavory neighborhoods was not proved to be a danger to herself because of the possibility that she might be assaulted).

---

[1] This case does not present a situation in which the appellant was armed or was known to possess weapons or use weapons.

In the present case, the evidence concerning appellant's actual interactions with the police reveals that she has, in fact, become agitated and combative when taken into custody. The record also reveals, however, that the police officers who took her into custody were aware of her situation and were adept at handling her; there is no evidence that they harmed her or even threatened to harm her in any way. The conclusion that appellant is a danger to herself because some officer, at some unknown point in the future, might kill or harm her is unduly speculative and does not establish, by clear and convincing evidence, that appellant is a danger to herself.

We reject without discussion the state's alternative argument in support of affirmance that appellant is unable to meet her basic needs. *See generally State v. M. A. B.*, 212 Or App 400, 403, 157 P3d 1256 (2007) (to commit a person on basic needs, the state must establish by clear and convincing evidence that the individual, due to a mental disorder, is unable to obtain some commodity such as food, water, or life-saving medical care).

Reversed.