157 P.3d 1256 (2007)
212 Or. App. 400
In the Matter of M.A.B., Alleged to be a Mentally Ill Person.
STATE of Oregon, Respondent,
v.
M.A.B., Appellant.
050969426; A131985.
Court of Appeals of Oregon.
Submitted on Record and Briefs March 22, 2007.
Decided May 2, 2007.
*1257 Dianna J. Gentry filed the brief for appellant.
Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, and Judy C. Lucas, Senior Assistant Attorney General, filed the brief for respondent.
Before HASELTON, Presiding Judge, and ARMSTRONG and ROSENBLUM, Judges.
HASELTON, P.J.
Appellant challenges an order adjudicating him to be a mentally ill person and continuing his commitment to the Department of Human Services. ORS 426.301-426.307. He asserts that (1) the trial court improperly, on its own motion, admitted into evidence the precommitment investigation report pertaining to his original commitment and cross-examined him on the basis of that report and (2) the state failed to prove, by clear and convincing evidence, that, because of a mental disorder, he was unable to provide for his basic needs. ORS 426.005(1)(d)(B). On de novo review, State v. O'Neill, 274 Or. 59, 61, 545 P.2d 97 (1976), we agree with both of appellant's challenges. Accordingly, we reverse.
Appellant was originally involuntarily committed in September 2005 on the grounds that he was dangerous to himself and could not provide for his basic needs. As his term of commitment approached its end in March 2006, the Department of Human Services certified that appellant was still mentally ill and in need of further treatment. ORS 426.301(1). The certification alleged that appellant was mentally ill due to his inability to provide for his basic personal needs. Appellant protested further commitment and requested a hearing.
At the time of the hearing on continuing commitment, appellant had been diagnosed with paranoid schizophrenia. He talked incessantly throughout the hearing, repeatedly expressing his interest in leaving the hospital and managing his own affairs.[1] In addition to appellant's numerous comments, Dr. Bruce Johnstone, appellant's treating psychiatrist, and Diane Bowman, appellant's social worker, testified concerning the effects of appellant's condition.
Appellant requires both medication for his mental disorder and blood pressure medication. Johnstone testified that, if appellant were released, he would "probably stop taking his medication because he does not believe he needs the medication." Johnstone further testified that
"[if appellant] does not take his medicines * * * he starts taking drugs. Alcohol and street drugs.
"* * * * *

*1258 "* * * [If released,] [h]e would stop taking his medications, and he would become vulnerable to drugs, and he would become restless[.]"
However, when examined further, Johnstone explained that his opinion was based not on his personal observations of appellant, but, instead, on information in a patient history he was "not sure exactly" the origins of. Johnstone stated that, "using * * * [that] history as a guide, I would believe he would be [likely to begin drug use again]."[2]
Regarding appellant's blood pressure medication, Johnstone stated that appellant "runs the riskincreased risk of heart disease, stroke, and (indiscernible) damage the more days he has high blood pressure." However, he agreed that "that's not a near future thing" necessarily resulting in harm in the next weeks or even months.
Bowman explained that appellant's only plan to obtain housing was based on a misconception of certain social services, and that, otherwise, appellant had no viable plan for shelter. Bowman also explained that, in order to obtain housing, appellant would have to participate in interviewsand that, in his current condition, especially without taking medication, he would be unlikely to receive assistance.[3]
Following that testimony, the trial court, over appellant's objection, admitted into evidence the precommitment investigation report from the original commitment. The investigator who prepared that report was not present at the hearing. The court then relied on the content of that report to examine appellant regarding whether he would engage in substance abuse upon release. Appellant responded by repeatedly denying that he would engage in substance abuse, but "just want[s] to smoke cigarettes and eat candy bars and potato chips." He explained, "I don't use meth, crack cocaine or none of that stuff. I smoke cigarettes and eat candy."
The trial court concluded that appellant still suffered from a mental illness and was unable to meet his basic personal needs. Consequently, the court ordered that appellant be committed for an additional period not to exceed 180 days.
ORS 426.130 allows the involuntary commitment of a "mentally ill" person to the Department of Human Services for a period not to exceed 180 days. ORS 426.301(1) provides for the continued commitment of a person who has been committed under ORS 426.130 when the person "is still mentally ill and in need of further treatment." As relevant here, a "mentally ill person" is "a person who, because of a mental disorder," is "[u]nable to provide for basic personal needs and is not receiving such care as is necessary for health or safety." ORS 426.005(1)(d)(B).
In order to commit a person on the "basic needs" ground, "[t]he state must establish by clear and convincing evidence that the individual, due to a mental disorder, is unable to obtain some commodity (e.g., food and water) or service (e.g., life-saving medical care) without which he cannot sustain life." State v. Bunting, 112 Or.App. 143, 145, 826 P2d 1060 (1992). To meet that standard, the state must show, again by clear and convincing evidence, that "there is a likelihood that the person probably would not survive in the near future because the person is unable to provide for basic personal needs." Id. at 146, 826 P.2d 1060; see also State v. Puha, 208 Or.App. 453, 461-62, 144 P.3d 1044 (2006) (reiterating Bunting's standards).
The "clear and convincing" evidence standard is rigorous. To be "clear and convincing," evidence must be of "extraordinary persuasiveness." State v. Howell, 53 Or.App. 611, 617, 633 P.2d 14 (1981). The evidence must establish that "the truth of the facts asserted is highly probable." State v. Jayne, 174 Or.App. 74, 77-78, 23 P.3d 990, rev. den., 332 Or. 316, 28 P.3d 1176 (2001).
In his first assignment of error, appellant asserts that the trial court's sua *1259 sponte admission of, and reliance on, the precommitment investigation report from the original commitment proceeding violated ORS 426.095(4)(d)(C) and the principles stated in State v. Hitt, 179 Or.App. 563, 41 P.3d 434 (2002). The state concedes that the trial court erred in that regard, and we accept that concession as well founded. Under ORS 426.095(4)(d)(C), a precommitment investigation report cannot be admitted if the author is not "present during the proceeding to be cross-examined," unless the statute's protections are waived. Here, the investigator was not present at the continuation of commitment hearing, and neither appellant nor his counsel, on his behalf, waived the statute's requirements. Further, the record of the initial commitment hearing was not "automatically incorporated into the record" of the continuation of commitment proceeding. Hitt, 179 Or.App. at 566 n. 4, 41 P.3d 434.
The state contends, nevertheless, that, even without the erroneously admitted exhibit and the responses from appellant that the trial court elicited in its examination based on that document, the record is still sufficient to show that continuation of commitment was warranted because appellant would likely fail to take his medication, would be unable to find housing, and would engage in substance abuse. We disagree that on this record those concerns, individually or collectively, warranted continuation of commitment.
"The refusal to take medication is not sufficient, by itself, to prove an inability to provide for basic * * * needs," unless the evidence shows that the allegedly mentally ill person "cannot function without medication[ ]." State v. Cunningham, 190 Or.App. 202, 211, 78 P.3d 125 (2003); see also State v. Baxter, 138 Or.App. 94, 98, 906 P.2d 849 (1995) ("[B]y itself, failing to take medication is not sufficient if it causes only a speculative threat."). Here, Johnstone acknowledged that any risk from appellant's failure to take his blood pressure medication was "not a near future thing." Further, the record does not show that appellant would be "unable to function" without medication for his mental disorder. Rather, the only possible detriments suggested in this record that could occur if appellant failed to take that medication are that appellant might be unable to find housing promptly and might engage in substance abuse. However, neither of those concerns justifies continuation of commitment in this case.
Homelessness, alone, is not sufficient grounds for a "basic needs" commitment. Baxter, 138 Or.App. at 99, 906 P.2d 849. Rather, the record must persuasively establish that, because of the totality of the circumstances, "appellant [if homeless] `probably would not survive in the near future.'" State v. Hayes, 202 Or.App. 63, 67, 121 P.3d 17 (2005) (quoting Bunting, 112 Or.App. at 146, 826 P.2d 1060). Here, as in Hayes, although appellant's "prospects of finding housing * * * were, at best, uncertain," id., the record does not establish the requisite threat to appellant's survival in the near future.
The state contends, nevertheless, that, under our opinion in Cunningham, appellant's inability to articulate a coherent "plan" for obtaining shelter and managing his finances can be a sufficient ground for commitment. Cunningham is, however, materially distinguishable. In Cunningham, the appellant refused to take medication and "could not function without" it, had no available income, had lost 40 pounds in the preceding two months, and had no "reasonable plan for obtaining the necessities of life." 190 Or.App. at 212-13, 78 P.3d 125. Here, in contrast, the evidence did not demonstrate that appellant "could not function" without his medicationand, in fact, appellant identified one agency that might assist him in managing his Social Security income and, perhaps, in finding housing.
Finally, in some circumstances, the prospects of an allegedly mentally ill person engaging in substance abuse because of his or her untreated disorder can present such a threat as to warrant a "basic needs" (or "danger to self") commitment. Cf. State v. Linde, 179 Or.App. 553, 559-62, 41 P.3d 440 (2002) (addressing same issue). However, once again, the record here is inadequate. As noted, Johnstone's testimony in that regard was based entirely on a patient history of unknown origin. Further, the references *1260 to appellant's history of substance abuse in the original precommitment investigation report were inadmissibleand, in all events, in the related colloquy with the trial court, appellant adamantly denied that he would engage in substance abuse. What remains is appellant's testimony that he simply wants to "smoke cigarettes and eat candy bars and potato chips."
Reversed.
NOTES
[1] Appellant receives Social Security income; however, the record does not disclose the amount of those payments.
[2] Johnstone stated that he received a patient history from another doctor but did not know whether the information in that history was firsthand. Johnstone did not "know where th[e] information originally came from or how many levels it went through[.]"
[3] Johnstone testified to the same effect.