Argued and submitted August 7, reversed November 7, 2007

In the Matter of D. R. K.,
Alleged to be a Mentally Ill Person.

STATE OF OREGON,
*Respondent,*

*v.*

D. R. K.,
*Appellant.*

Yamhill County Circuit Court
M0548; A129782

171 P3d 998

James A. Palmer argued the cause and filed the brief for appellant.

Judy C. Lucas, Senior Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Haselton, Presiding Judge, and Armstrong and Rosenblum, Judges.

ROSENBLUM, J.

## ROSENBLUM, J.

The trial court committed appellant to the custody of the Department of Human Services after finding that, because of a mental disorder, appellant was a danger to herself and others and was unable to provide for her basic needs. On *de novo* review, *State v. North*, 189 Or App 518, 520, 76 P3d 685 (2003), we conclude that there is insufficient evidence to support any of those grounds for commitment, and we therefore reverse.

Appellant suffers from bipolar disorder and was experiencing a manic episode when she was placed on the hospital hold that led to her commitment hearing. When she was hospitalized, she had disorganized thinking and poor impulse control and was experiencing visual and auditory hallucinations. She had not been taking medication to control her bipolar disorder for eight months. She stated that she had quit taking the medication because it was causing hallucinations. She has a history of alternating between taking prescribed medication and self-medicating with illegal drugs—including cocaine, heroin, and methamphetamine—although, at the hospital, she asserted that she had not used drugs for at least a month; a urine test administered at the hospital was negative for drugs. At the time of the commitment hearing, appellant had been taking medication for five or six days. At the hearing, she was, for the most part, reasonably coherent, if somewhat animated, and did not appear to be experiencing hallucinations.

We begin by considering whether appellant was a danger to others. If the state relies on a previous act to establish that a person poses a danger to others, it must show that the act clearly forms the foundation for a prediction of future dangerousness. *State v. R. H.*, 212 Or App 479, 484, 157 P3d 1286 (2007). Evidence of verbal threats of violence is insufficient if the threats are not accompanied by any overt act to follow through with the threat or if they are not made under circumstances that make actual future violence highly likely. *Id.* at 484-85.

At the commitment hearing, a family member testified that, shortly before appellant was hospitalized, she had

seen her stabbing kitchen knives into the ground. The record also indicates that, at some point, appellant threatened to kill her mother and to cut off her mother's legs. However, there is no evidence as to the circumstances under which appellant made the threats against her mother. Nor is there any evidence of any acts by appellant suggesting that she would follow through with the threats. On the contrary, the mental health investigator testified that he doubted that appellant meant the threats literally. The incident in which she stabbed knives into the ground, whether considered separately or together with the threats against her mother, does not clearly form the foundation for a prediction of future dangerousness. We reject the "danger to others" ground for commitment.

■     We turn to whether appellant was a danger to herself. The state maintains that appellant has established a pattern of self-destructive behavior, and it argues that, at the time of the hearing, she had begun following the same pattern again. Specifically, the state asserts that appellant has "a history of using street drugs to substitute for the medication she had stopped taking." The state points out that appellant "had been off her medication for eight months and had used heroin and methamphetamine to self-medicate within the past month or two."

There are three problems with the state's argument. First, the fact that appellant had not used illegal drugs for at least a month calls into question whether she was truly following the same pattern of self-destructive behavior. Second, as the state itself points out, appellant has in the past used illegal drugs to *substitute* for her prescribed medication. There is no indication in the record that appellant uses illegal drugs when she is taking prescribed medication. At the hearing, appellant acknowledged that she needed the medication that she was given at the hospital and that it was helping her, and she stated that she was willing to continue taking it. The state presented no evidence suggesting that she would likely not continue to take the prescribed medication if she were released. Consequently, there is little reason to conclude on this record that she would return to using illegal drugs.

Finally, although we recognize that there are certain risks inherent in illegal drug use of the sort that appellant has in the past engaged in, it is not at all clear on this record that, even if she did resume using such drugs, that conduct would pose the kind of risk that the "danger to self" standard for commitment contemplates. *See State v. Olsen*, 208 Or App 686, 691, 145 P3d 350 (2006) ("Whether the state's evidence is sufficient to support commitment on that ground turns on whether a person's mental disorder would cause him or her to engage in behavior that is likely to result in physical harm to himself or herself in the near term. Although the law does not require that a threat of harm be immediate, it does require that the threat be real and exist in the near future." (Citations omitted.)); *cf. State v. Jacobson*, 142 Or App 371, 376-77, 922 P2d 670 (1996) (commitment based on danger to self was justified where evidence showed that the appellant's alcoholism had caused liver dysfunction and at least one seizure and that he was unable to stop drinking voluntarily). We reject the state's contention that appellant was a danger to herself.

■ We turn finally to appellant's ability to provide for her own basic needs. Commitment on that ground requires clear and convincing evidence that the person probably would not survive in the near future. *State v. Cunningham*, 190 Or App 202, 210, 78 P3d 125 (2003). The primary concern at the hearing was that, if released, appellant likely would be homeless because she was not able to return to her mother's home, where she had been staying, and did not have any specific place to go.

■■ At the hearing, appellant stated that she receives at least $800 a month from Social Security. She stated further that, if she were released, she would stay with her nephew and try to find an apartment in his neighborhood. In all events, homelessness is not, by itself, a sufficient ground for a "basic needs" commitment. *State v. Baxter*, 138 Or App 94, 99, 906 P2d 849 (1995). There is no indication in the record that appellant was, or ever had been, malnourished or that she lacked the ability to find adequate shelter. Although there may have been some uncertainty about appellant's prospects for finding housing, the record does not establish the requisite threat to appellant's survival in the near future.

In short, we conclude that the state failed to show that appellant was unable to provide for her basic needs.

Reversed.