Submitted October 3, 2008, reversed March 11, 2009

In the Matter of A. L. W.,
Alleged to be a Mentally Ill Person.

STATE OF OREGON,
*Respondent,*

*v.*

A. L. W.,
*Appellant.*

Multnomah County Circuit Court
070261488; A135017

204 P3d 103

Lance D. Perdue filed the brief for appellant.

Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, and Jeff J. Payne, Assistant Attorney General, filed the brief for respondent.

Before Haselton, Presiding Judge, and Armstrong, Judge, and Rosenblum, Judge.

ROSENBLUM, J.

**ROSENBLUM, J.**

Appellant appeals a judgment committing her to the Mental Health Division on the ground that, due to a mental disorder, she was unable to provide for her basic needs and was not receiving such care as was necessary for her health or safety. ORS 426.005(1)(d)(B); ORS 426.130(1)(b)(C). Appellant was placed on a mental health treatment hold after she was found disoriented and walking in the street in Portland. She was afflicted with head lice and an abscessed tooth. We reverse.

We take the following facts from the record of the commitment hearing. Appellant suffers from schizophrenia and bipolar disorder. At the time that appellant was placed on a mental health treatment hold, she was homeless, having recently arrived by bus from Washington State. She had no identification or money. She was not taking her mental health-related medications. She was eligible for Social Security benefits, but her payee was in Washington, where she had recently been hospitalized, and she had not arranged for a new payee to be appointed in Oregon. She had health care coupons from Washington's Medicaid program, which cannot be used in Oregon. She had no family or friends who could assist her in providing for her basic needs.

Appellant testified that she was willing to go with someone from Project Respond[1] to Vancouver to obtain new identification, which would help her get access to the Oregon Health Plan and arrange for a new Social Security payee. She also stated that she would "go to DHS and apply for Oregon medical" and understood that she would have to "[g]et a different payee" in order to obtain her Social Security benefits in Oregon. She named several shelters that she could take the bus to if she were released. The crisis response clinician Hackett, who had been working with appellant confirmed that outreach services would be available to appellant were she to be released, but had concerns about appellant's ability and willingness to follow through.

---

[1] Project Respond is an organization in Portland that provides mental health workers to homeless individuals suffering from mental illness.

The seriousness of appellant's abscessed tooth, in particular, concerned Hackett and the mental health examiners who questioned appellant at the hearing and submitted reports in support of their position that she could not provide for her basic needs. However, none of them based their concerns about appellant's dental situation on any conversations with medical professionals or a review of her medical record. Nor did any medical expert testify at the hearing as to the consequences of nontreatment of the abscessed tooth. Although the precommitment investigation report included hearsay from the hospital medical staff who treated appellant's tooth infection during her recent hospitalization, the trial court excluded those portions of the report.

When questioned at the hearing, appellant acknowledged that the tooth infection was serious and that the precommitment report indicated that it might be life threatening if left untreated. She also indicated that it was not causing her pain and that she was not aware that it might imperil her jaw or her eyes. Appellant had been prescribed penicillin for the tooth infection, had been taking it for a few days, and was willing to continue taking it. She explained that, if released, she would go to the emergency room for further treatment for her tooth, including, possibly, x-rays. Again, Hackett had concerns whether appellant would follow through with that plan.

Appellant's attorney argued that the state had failed to establish by clear and convincing evidence that appellant was unable to provide for her basic needs. She noted, in particular, a lack of evidence supporting the expressed consequences of failing to treat the abscessed tooth and argued that

> "[a]nything about her dental situation being eminently [*sic*] threatening to her physical safety or her ability to survive is speculation because we don't have the evidence. If we had a doctor testifying, if we had someone testifying here, saying, 'Yes, she has a condition and it's eminently [*sic*] life threatening if we don't treat it right away,' that would be a different story, but we don't have that."

The state argued that appellant was unable to meet her basic needs due to her past unwillingness to accept help that had been offered and her present "vague and confused plan" for obtaining needed help. The state's specific focus was on the "issue of the tooth" and its concern that she would not follow up with treatment for the infection.

The trial court found that appellant's mental disorder, in particular, her "confused thinking," prevents her from having an adequate plan to obtain food, shelter, and necessary medical treatment for her tooth infection. Thus, it ordered her commitment based on its conclusion that she is unable to provide for her basic needs.

We review *de novo. State v. O'Neill*, 274 Or 59, 61, 545 P2d 97 (1976). To commit a person on the "basic needs" ground, "[t]he state must establish by clear and convincing evidence that the individual, due to a mental disorder, is unable to obtain some commodity (*e.g.*, food and water) or service (*e.g.*, life-saving medical care) without which he [or she] cannot sustain life." *State v. Bunting*, 112 Or App 143, 145, 826 P2d 1060 (1992). To meet that standard, the state must show, again by clear and convincing evidence, that "there is a likelihood that the person probably would not survive in the near future because the person is unable to provide for basic personal needs * * *." *Id.* at 146; *see also State v. Puha*, 208 Or App 453, 461-62, 144 P3d 1044 (2006) (reiterating *Bunting*'s standards).

Given the absence of any evidence that the abscessed tooth actually posed a life-threatening risk to appellant, the record does not support a determination that appellant should be involuntarily committed, even if it tends to show that she would not follow through with medical treatment. *Cf. State v. M. L. F.*, 220 Or App 629, 634-35, 188 P3d 368 (2008) (rejecting state's commitment argument on danger to self and basic needs grounds where state failed to adduce "expert medical testimony assessing the nature, severity, proximity, and likelihood of adverse physical consequences based on appellant's medical history and current condition"). Neither the witnesses (appellant and Hackett) nor any of the admitted reports provided a meaningful assessment of the

dangerousness of her abscessed tooth.[2] Appellant's acknowledgement of the excluded hearsay evidence in the precommitment investigation report—that her abscessed tooth "might" be life-threatening—is insufficient to establish the "nature, severity, proximity, and likelihood" of the abscessed tooth leading to appellant's death. *Id.*

Thus, even if the trial court was correct in finding that appellant's mental health disorder caused her to be too disorganized to follow through with the antibiotics for the tooth infection, there is insufficient evidence that the consequent danger to appellant was such as to pose a threat in the near future to her safe survival. *See id.* at 635 (concluding that an appellant who would not take anti-blood clot medications could not be committed on basic needs ground because speculative risk of blood clots and stroke was insufficient evidence of a near-future threat); *State v. M. A. B.*, 212 Or App 400, 405-06, 157 P3d 1256 (2007) (concluding that an appellant who would not take blood pressure medications could not be committed on basic needs ground because evidence merely established that the appellant's high blood pressure generally elevated his risk of heart disease and stroke); *State v. Hayes*, 202 Or App 63, 67-68, 121 P3d 17 (2005) (concluding that an appellant who was homeless and would not take diabetes medications could not be committed on basic needs ground because speculative risk of untreated diabetes was insufficient evidence of a near future threat).

Moreover, appellant's plans to provide for her other basic needs were not so speculative as to warrant commitment. Appellant acknowledged the importance of obtaining food and shelter, naming several locations where she would go to obtain those services. No evidence was presented that appellant had not been eating, and homelessness by itself is not sufficient to demonstrate an inability to provide for one's basic needs. *State v. Baxter*, 138 Or App 94, 99, 906 P2d 849 (1995) ("Although the lack of certain shelter is not a good plan, we cannot say that homelessness by itself is sufficient grounds for commitment."). And, although appellant had no

---

[2] While the transcript of the hearing and the examiners' reports are sprinkled with references to the potential of losing an eye or a jaw due to the tooth infection, there is simply no medical testimony in the record supporting those references.

money on her person and needed to arrange for an Oregon payee to obtain her Social Security benefits, she presented an adequate plan to do so.

Thus, the record does not support the trial court's conclusion that appellant was unable to provide for her basic needs.

Reversed.