Submitted March 31, reversed June 2, 2010

In the Matter of B. C.,
Alleged to be a Mentally Ill Person.

## STATE OF OREGON,
*Respondent,*

*v.*

### B. C.,
*Appellant.*

Clackamas County Circuit Court
M0809082; A140314

233 P3d 445

Gay Canaday filed the brief for appellant.

John R. Kroger, Attorney General, Jerome Lidz, Solicitor General, and Karla H. Ferrall, Assistant Attorney General, filed the brief for respondent.

Before Landau, Presiding Judge, and Ortega, Judge, and Sercombe, Judge.

SERCOMBE, J.

414

## SERCOMBE, J.

Appellant appeals a judgment committing her to the Mental Health Division of the Department of Human Services under ORS 426.130. That statute allows commitment if a person is "[m]entally ill based upon clear and convincing evidence." ORS 426.130(1)(b). A " '[m]entally ill person' " is a "person, who, because of a mental disorder" is "dangerous to self or others," is "unable to provide for basic personal needs and is not receiving such care as is necessary for health or safety," or is chronically mentally ill under particular circumstances. ORS 426.005(1)(e). After a hearing, the trial court determined that appellant was unable to provide for her basic personal needs and was not receiving necessary care. Appellant contends that a "basic needs" determination requires proof that she "probably would not survive in the near future" without commitment, *State v. Bunting*, 112 Or App 143, 146, 826 P2d 1060 (1992), and that the record does not contain that evidence. On *de novo* review, we agree with appellant and, for the reasons stated below, reverse the judgment of commitment.[1]

Because the court examines the entire record as part of *de novo* review, "the particular ground on which the court committed the appellant does not limit our review." *State v. Puha*, 208 Or App 453, 460, 144 P3d 1044 (2006). There was insufficient evidence in the record that appellant was a danger to herself or to others, and the state does not pursue those contentions on appeal. Therefore, we evaluate the record in this case under ORS 426.130 to determine whether appellant's admitted mental disorder caused her to be unable to

---

[1] We traditionally classify mental commitment cases as equitable in nature and review those decisions like equity cases—by reviewing anew upon the record ("*de novo*" review), *State v. O'Neill*, 274 Or 59, 61 n 3, 545 P2d 97 (1976). Assuming that mental commitment cases remain a species of equitable proceedings, under new legislation our *de novo* review of equity cases may be discretionary for cases in which the notice of appeal was filed after June 4, 2009. ORS 19.415(3)(b) provides: "Upon an appeal in an equitable action or proceeding other than an appeal from a * * * termination of parental rights, the Court of Appeals, acting in its sole discretion, may try the cause anew upon the record or make one or more factual findings anew upon the record." That limited standard of review applies "only to appeals for which a notice of appeal is filed with the Court of Appeals under ORS 19.240(3) on or after the effective date of this 2009 Act." Or Laws 2009, ch 231, § 2. The effective date of the Act was June 4, 2009. The notice of appeal in this case was filed October 22, 2008.

provide for her basic personal needs, and then whether appellant is likely, willing, and able to participate in voluntary treatment so as to avoid the need for commitment.

The record establishes the following facts. Appellant, a 45-year-old woman, was brought to the hospital by police after they found her wandering in the road partially unclothed. A precommitment investigation was performed, and doctors concluded that there was probable cause to believe she was mentally disordered. A commitment hearing was held pursuant to ORS 426.095 to 426.130. The evidence at the hearing showed that appellant had recently engaged in a variety of erratic behaviors, including dancing on a dark road partially unclothed, entering a stranger's home at night without permission, destroying her own property, and exhibiting rambling nonsensical speech, severe confusion, and memory loss. In the week before her hospitalization, appellant had also been in a serious car accident, but she had no memory of the accident at the time of the hearing.

Before her hospitalization, appellant had been living in a trailer on her sister's property. The sister testified at the hearing that appellant was no longer welcome to stay there and that the sister planned to get a restraining order to prevent appellant from returning to the property. In the months before the commitment hearing, appellant had also spent some time living in her car, but the car was damaged in an accident and was no longer in appellant's possession. The record indicates that none of the family members who testified at the hearing would be willing to provide housing for appellant and that appellant has been evicted from a number of previous residences because of destructive, bizarre, or threatening behavior. Appellant testified that, if released, she would probably go stay with a friend with whom she had stayed before, although appellant had not been in contact with that friend since entering the hospital.

At the time of the commitment hearing, appellant had no money or financial resources. Appellant receives disability benefits and food stamps, but she testified at the hearing that she had no money and would not receive another benefit check for approximately two weeks.

A mental health investigator testified at the hearing that, based on his interviews with appellant and her family members, appellant suffers from bipolar disorder, a mental illness, and that he had concerns about her ability to meet her basic needs as a result of that illness. Specifically, the investigator testified that appellant's erratic and threatening behavior had alienated her family and friends, who were no longer willing to provide her with shelter and assistance. According to the investigator, appellant had no place to stay and could not articulate any plan for how she would obtain shelter or food in the time before her next benefit check was to arrive. The investigator also testified that appellant made statements about killing her daughter but had no specific plan to do so and had not previously attempted to hurt anyone. Several of appellant's family members also testified about appellant's history of evictions, threatening behavior, and substance abuse.

The trial court concluded that appellant was not "in a position, because of [her] present situation, to survive for [her] basic, personal needs." The court found that appellant did not have a place to go, and stated that "I am concerned about your ability to keep yourself out of harm's way, which is part of my findings regarding your inability to maintain your basic, personal needs." The court then committed appellant to the Mental Health Division for up to 180 days.

Appellant argues that the state failed to meet its burden of proof, and, on *de novo* review, we agree. As noted earlier, there is no dispute that appellant has a mental disorder. What remains in contention, in determining whether appellant is "mentally ill" under ORS 426.130(1)(b), is whether the state has shown by clear and convincing evidence that appellant's mental disorder, at the time of the hearing, caused appellant to be unable to provide for her basic needs.

In order to establish that appellant is "unable to provide for basic personal needs and is not receiving such care as is necessary for health and safety," ORS 426.005(1)(e)(B) (definition of "mentally ill person"), the state must prove that

"there is a likelihood that the person probably *would not survive in the near future* because the person is unable to provide for basic personal needs." *Puha*, 208 Or App at 462 (emphasis added). "Basic needs" include shelter, food, and medical care. *State v. Turel*, 182 Or App 235, 240, 48 P3d 175 (2002). Appellant argues that the state has not shown that there is a likelihood that she would not survive in the near future because she is unable to acquire shelter, food, or other necessities. The state contends that, at the time of the hearing, appellant had nowhere to live and no resources or plan that would enable her to obtain shelter for a few weeks, making her unable to meet her basic needs. Although it is true that "[t]he goal of the commitment statute is safe survival, not merely the avoidance of immediate death," and therefore the state "need not postpone action until the individual is on the brink of death," *Bunting*, 112 Or App at 145, here, the state has not shown that appellant's short-term lack of housing presents an imminent likelihood that she would not survive.

Appellant testified that she could stay with a friend, and the record shows that, within a few weeks of the hearing, she would receive a benefit check. Appellant's inability to articulate a plan beyond that is not sufficient to justify commitment. This court has previously reversed mental commitments in cases where the allegedly mentally ill person had some barriers to obtaining shelter but the record did not show that the person was in imminent danger as a result. In *State v. M. C.*, 227 Or App 530, 533-34, 206 P3d 1096 (2009), the appellant suffered from a mood disorder and had angrily destroyed his identification card (which is needed for entry into a homeless shelter), had chosen to live on the streets in winter for a short period, and had squandered his disability income on drugs. At the time of the hearing, the appellant still had no identification card and no clear plan for obtaining shelter. However, we held that, absent clear and convincing evidence that the appellant would again squander his resources or choose to live on the street in winter, the state failed its burden of proof to show imminent threat to safe survival. Although fact-matching in mental commitment cases is not particularly useful, and each case must be decided on its own facts, *State v. Jayne*, 174 Or App 74, 82, 23 P3d 990

(2001), we find the reasoning in *M. C.* persuasive in the context of this case. *See also State v. D. R. K.*, 216 Or App 120, 124, 171 P3d 998 (2007) (basic needs commitment not justified by housing uncertainty where there was no evidence that appellant was malnourished or lacked ability to find adequate shelter). The state has not clearly shown that appellant's barriers to obtaining housing are putting her survival at risk in the near term.

Even if we were to find on this record that appellant would certainly become homeless if not committed, that would not necessarily satisfy the state's burden to show that she is unable to meet her basic needs.

> "Homelessness, alone, is not sufficient grounds for a **'basic needs'** commitment. [*State v.*] *Baxter*, 138 Or App [94, 99, 906 P2d 849 (1995)]. Rather, the record must persuasively establish that, because of the totality of the circumstances, 'appellant [if **homeless**] "probably would not survive in the near future." ' *State v. Hayes*, 202 Or App 63, 67, 121 P3d 17 (2005) (quoting *Bunting*, 112 Or App at 146). Here, as in *Hayes*, although appellant's 'prospects of finding housing * * * were, at best, uncertain,' *id.*, the record does not establish the requisite threat to appellant's survival in the near future."

*State v. M. A. B.*, 212 Or App 400, 406, 157 P3d 1256 (2007) (ellipsis in original); *see also State v. A. L. W.*, 226 Or App 445, 450-51, 204 P3d 103 (2009) (lack of shelter and funds insufficient basis for basic needs commitment). The state has not met its burden to show by clear and convincing evidence that appellant is a mentally ill person.

Reversed.