Submitted June 24, reversed September 21, 2011

In the Matter of M. J.,
Alleged to be a Mentally Ill Person.

STATE OF OREGON,
*Respondent,*

*v.*

M. J.,
*Appellant.*

Clackamas County Circuit Court
M1002003; A145031

263 P3d 1115

Gay Canaday filed the brief for appellant.

John R. Kroger, Attorney General, Mary H. Williams, Solicitor General, and Kristen G. Williams, Assistant Attorney General, filed the brief for respondent.

Before Haselton, Presiding Judge, and Armstrong, Judge, and Duncan, Judge.

HASELTON, P. J.

**HASELTON, P. J.**

Appellant appeals from a judgment of involuntary civil commitment, contending that the record is insufficient to support the trial court's determination that, as a result of his mental disorder, he was unable to provide for his basic personal needs and was not receiving such care as is necessary for health or safety. ORS 426.005; ORS 426.070; ORS 426.130. The state argues that the trial court properly committed appellant. We conclude that the evidence is legally insufficient to support the trial court's determination that appellant was unable to provide for his basic needs. Accordingly, we reverse.

"Pursuant to ORS 19.415(3), unless we exercise our discretion to review the matter *de novo*, we are bound by the trial court's findings of historical fact that are supported by any evidence in the record; we further review the court's dispositional conclusions, predicated on those findings, for errors of law." *State v. B. B.*, 240 Or App 75, 77, 245 P3d 697 (2010) (citing *State v. D. R.*, 239 Or App 576, 579, 244 P3d 916 (2010)).[1] In this case, in the absence of a request by appellant, we do not exercise our discretion to engage in *de novo* review. Thus, we recount the facts consistently with that standard. *Id.*

At the time of the commitment hearing, in February 2010, appellant was a 34-year-old man in apparent good physical health. The events that ultimately culminated in the commitment hearing began in May 2009. At that point, appellant, who had been employed as a custodian, stopped taking his mood-stabilizing and antipsychotic medication and, consequently, lost his job. In June 2009, appellant was arrested in Washington State after a physical altercation

---

[1] Although we have historically reviewed civil commitment cases, like other equitable proceedings, "anew upon the record," ORS 19.415(3) (2007), *amended by* Or Laws 2009, ch 231, § 2, the legislature modified that statute to change our standard of review for cases—like this one—in which the notice of appeal was filed on or after June 4, 2009. *See generally DHS v. Three Affiliated Tribes of Fort Berthold*, 236 Or App 535, 538-39, 238 P3d 40 (2010) (discussing amendment). ORS 19.415(3)(b) now provides that, "[u]pon an appeal in an equitable action or proceeding * * * the Court of Appeals, *acting in its sole discretion*, may try the cause anew upon the record or make one or more factual findings anew upon the record." (Emphasis added.)

with a woman with whom he was romantically involved. Appellant spent some time in jail in Washington and returned to Oregon upon release. He then alternately resided in hotels and in his parents' home for a period of months. During that period, appellant's good friend, Jean Kirsch, helped appellant by distributing funds, providing rides, and delivering personal items and groceries to him.[2]

In late January 2010, appellant's case manager placed him at the Oregon City Manor, a boarding house. Appellant soon left the boarding house and refused to return because he believed that the food was unsanitary and he wanted to avoid conflict with another resident. The day after he left, appellant went to Clackamas County Medical Health Crisis Center for a medication review. At the crisis center, appellant had an incident with the police that resulted in appellant being placed on the hospital hold that precipitated his commitment.[3]

Two mental health examiners interviewed appellant while he was in the hospital. Both examiners determined that appellant suffered from an unspecified mental disorder, which could be schizoaffective disorder, but neither examiner was able to render a conclusive diagnosis. Both examiners determined that appellant was not able to provide for his own basic personal needs.

At the hearing, Kirsch testified, recounting appellant's history and the circumstances described above. Kirsch also stated that appellant had odd eating habits, such as consuming only chicken thighs and distilled water. Kirsch explained that appellant rejected prepared food because he believed it was cooked in unclean water or, even worse, poisoned. For those reasons, appellant preferred to prepare his own food. There was no testimony pertaining to severe

---

[2] Kirsch has been a significant part of appellant's life for over 20 years. The record shows that appellant has social security income and had food stamp assistance. Kirsch controlled appellant's funds and made sure that appellant had food. At the commitment hearing, Kirsch indicated that she would continue to support appellant "[t]o the degree possible."

[3] The record does not reveal the details of the incident that resulted in the hospital hold.

weight loss or other medical consequences of appellant's eating habits.

Appellant testified on his own behalf at the commitment hearing. Appellant denied having a mental disorder and explained that he refused medication because it made him excessively drowsy. Appellant also stated that he did not want to be homeless but that he would not stay in a shelter or group home. Appellant expressed the desire to live alone and prepare his own food. Finally, appellant testified that he did not agree to voluntary outpatient treatment because he did not wish to take the prescribed doses of psychotropic medication.

The trial court was concerned that appellant was not insightful about his mental disorder and refused medication, that he was reportedly eating only chicken thighs, that he refused to stay in a group home or shelter, and that his limited income would be insufficient for obtaining food and housing in the long term. The trial court told appellant:

> "You're not starving to death. You do have food, but your judgment regarding how to get that food and where it's coming from is horrible and the most difficult situation is you have nowhere to go. I believe that, although you're probably not going to die tomorrow or the next day because of this, that ultimately you're going to be hard pressed to survive until you are able to deal with your mental disorder. You make some sense. I've seen people in a lot more serious mental condition than you have, but you've been going downhill so fast the last year that we've got to stop it and this is the time to do that."

The trial court determined that appellant was mentally ill, that he could not provide for his basic needs, and that he was not willing or able to participate in treatment on a voluntary basis. Consequently, the court ordered that appellant be committed to the Mental Health Division.

On appeal, appellant raises two contentions. First, he contends that the state did not "prove by clear and convincing evidence that [he] had a mental disorder." Second, he contends that, even if he had such a disorder, the state failed to prove that, as a result of that disorder, he was unable to

provide for his basic personal needs. We reject the first contention without discussion, and, for the reasons explained below, we agree with the second.

"Basic needs are the things necessary for survival." *State v. Shorett*, 194 Or App 587, 595, 95 P3d 1146 (2004). They include the needs for water, food, and life-saving medical care. *State v. A. M.-M.*, 236 Or App 598, 603, 238 P3d 407 (2010) (citation omitted). As we have very recently reiterated,

> "the controlling legal principle is that, in order for a trial court to commit a person on the ground that the person is unable to provide for his or her basic needs, the state must present evidence that the person's mental disorder creates an *imminent and serious* threat to the person's health and safety. In other words, the state must establish the existence of a nonspeculative threat to the person's *near-term* survival. Evidence that the person suffers from a mental disorder that impairs his or her judgment and has caused discomfort or minor injury is legally insufficient to support a basic needs commitment."

*State v. D. M.*, 245 Or App 466, 572-73, 263 P3d 1086 (2011) (emphasis added).

Here, the trial court determined that appellant could not provide for his basic needs because he did not have an immediate place to go and he was not making wise food choices. *See* 245 Or App at 557. Viewing the facts consistently with the trial court's findings, those facts are legally insufficient to support the trial court's determination that appellant was unable, at the time of the hearing, to meet his basic personal needs.

We first address the trial court's concern that appellant would not find housing if released. "Homelessness, alone, is not sufficient grounds for a basic needs commitment. Rather, the record must persuasively establish that, because of the totality of the circumstances, appellant, if homeless, probably would not survive in the near future." *State v. M. A. B.*, 212 Or App 400, 406, 157 P3d 1256 (2007) (citations and internal quotation marks omitted); *see also State v. B. C.*, 235 Or App 412, 418, 233 P3d 445 (2010). At the time of the hearing, appellant was between residences and, when asked

by the court where he would go if released, he could not articulate a plan. Appellant was in good physical health at the time of the hearing, and—notwithstanding appellant's apparent inability to articulate an immediate housing plan—nothing on the record indicates that homelessness would create an imminent threat to his survival.

As to appellant's dietary proclivities, nothing in the record suggests that appellant was in imminent danger of malnutrition or starvation. Appellant did not have medically required dietary needs, nor had he recently lost a significant amount of weight, nor did he appear emaciated or malnourished. *Cf. State v. Bolander*, 178 Or App 514, 516-19, 37 P3d 216 (2001) (affirming a basic needs commitment where the appellant suffered from diabetes and had "been instructed to follow a special diet" but was not adhering to requisite diet and "had no insight into what she should eat to control her diabetes"); *State v. Johnson*, 117 Or App 237, 240, 843 P2d 985 (1992) (affirming a basic needs commitment where the appellant was "seriously malnourished when she was not under a doctor's care"). Here, the record shows that appellant was unreasonably paranoid about other people preparing his food, but the uncontroverted evidence also shows that appellant was eating and drinking regularly. Thus, notwithstanding his perhaps delusionally driven dietary habits, appellant was willing to eat and was able to obtain food. Again, the facts are legally insufficient to support commitment.

Reversed.